UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
STUART JACKSON,                          :   11 Civ. 5826 (LAK) (JCF)
                                         :
             Plaintiff,                   :        REPORT AND
                                         :        <u>RECOMMENDATION</u>
      - against -                         :
                                         :
NEW YORK COUNTY ASSISTANT DISTRICT :
ATTORNEY SEEWALD, NEW YORK COUNTY :
ASSISTANT DISTRICT ATTORNEY              :
SCHULMAN, NEW YORK COUNTY ASSISTANT:
DISTRICT ATTORNEY KITSIS, NEW YORK :
COUNTY DISTRICT ATTORNEY SENIOR          :
INVESTIGATOR MICHAEL WIGDOR, NEW  :
YORK COUNTY DISTRICT ATTORNEY            :
SUPERVISING INVESTIGATOR WALTER          :
ALEXANDER, CHIEF OF THE                  :
INVESTIGATION BUREAU OF THE NEW          :
YORK COUNTY DISTRICT ATTORNEY'S          :
OFFICE JOSEPH PENNISI, ASSISTANT :
CHIEF OF THE BUREAU OF THE NEW           :
YOUR COUNTY DISTRICT ATTORNEY'S          :
OFFICE TERRENCE, JOHN/JANE DOE           :
EMPLOYEES OF THE NEW YORK COUNTY  :
DISTRICT ATTORNEY'S OFFICE, ROGER :
STAVIS, DAVID BLITZER AND ALLISON :
BLITZER,                                 :
                                         :
             Defendants.                  :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.

      Plaintiff Stuart Jackson filed this action under 42 U.S.C. §

1983 and New York state law alleging that certain named and unnamed

employees of the New York County District Attorney's Office

(collectively, the "District Attorney Defendants") as well as

private citizens David Blitzer, Allison Blitzer, and Roger Stavis

(collectively, the "Private Defendants") conspired to deprive Mr.

Jackson of his civil rights by, among other things, subjecting him

to false arrest and malicious prosecution.  Mr. and Ms. Blitzer

have filed a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure ("Rule 12(b)(6)"), as has Mr. Stavis.   Because Mr. Jackson's Complaint fails to state a claim against any of the Private Defendants, I recommend that the motions be granted.

<u>Legal Standard for Dismissal</u>

In considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam).  A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, __, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  <u>Iqbal</u>, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  Thus, speculative, conjectural allegations are legally insufficient to state a claim for relief.  <u>See, e.g.</u>, <u>Missere v. Gross</u>, __ F. Supp. 2d __, __, 2011 WL 6030665, at *17 (S.D.N.Y. March 31, 2011) ("[T]he Complaint alleges no <u>facts</u> whatsoever that would support such an inference, and it cannot survive on mere speculation."); <u>Basile v. Walt Disney Co.</u>, 717 F. Supp. 2d 381, 390 (S.D.N.Y. 2010) ("These allegations are nothing but conjecture and are thus legally insufficient to state a claim . . . .").

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002). In addition, a court may consider "matters of which judicial notice may be taken." Id. at 153 (internal quotation marks omitted); see also Elek v. Incorporated Village of Monroe, ___ F.Supp.2d ___, ___, 2011 WL 4472027, at *3 (S.D.N.Y. Sept. 27, 2011). It is well-established that a court may take judicial notice of documents filed in other courts "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); see also Elek, 2011 WL 4472027, at *3.

Here, the Complaint includes, as attachments, (1) the trial testimony of Ms. Blitzer in the criminal trial of Mr. Jackson in New York County Supreme Court; (2) the testimony of Mr. Stavis to the grand jury that returned the indictments against Mr. Jackson and Stuart Ross; and (3) the trial testimony of Mr. Stavis in the criminal trial against Mr. Jackson. (Compl., Exhs. 1-3). These documents are therefore deemed part of the Complaint for the purposes of these motions.

Mr. Jackson complains that the Blitzers and Mr. Stavis attached "extraneous" affidavits and exhibits to their motions to dismiss, and argues that I should not consider some or all of those exhibits. (Opposition to Blitzer Motion ("Opp. to Blitzer Mot.")

at 8, 10-11; Opposition to Stavis Motion ("Opp. to Stavis Mot.") at 7, 9-10).  The Blitzers' Motion includes an affidavit of David S. Douglas.  (Affidavit of David S. Douglas dated Nov. 3, 2011 ("Douglas Aff.").  This affidavit attaches as exhibits, in addition to the Complaint and Mr. Stavis' grand jury testimony, (1) the trial testimony of Mr. Blitzer in the underlying criminal trial (Douglas Aff., Exh. 1 at 91-455)[1]; (2) a summons in the New York County Supreme Court civil case <u>Blitzer v. Ross</u>, Index No. 111544/08 (Douglas Aff., Exh. 2); (3) the judgment in <u>Blitzer v. Ross</u> (Douglas Aff., Exh. 3); and (4) the indictment in the criminal case against Mr. Jackson and Mr. Ross (Douglas Aff., Exh. 4).  The trial testimony of Mr. Blitzer is undoubtedly part of the Complaint, as the Complaint cites it repeatedly, although erroneously, as Exhibit 1.[2]  (Compl., ¶¶ 27-29, 41, 47 & 50).  Thus, I will consider this testimony.  <u>See</u> <u>Chambers</u>, 282 F.3d at 152.  I also take judicial notice of the state court documents for the purpose of establishing that a summons for Mr. Ross issued in the civil case, that judgment was issued in favor of Mr. Blitzer

---

[1] In referring to grand jury or trial testimony, I will follow the practice of the parties and use the page numbers from the court transcripts.

[2] The Complaint filed with the Court does not include Mr. Blitzer's trial testimony as its first exhibit.  Instead, Ms. Blitzer's trial testimony is labeled as Exhibit 1.  The copy of the Complaint filed with the Douglas Affirmation does not include Ms. Blitzer's trial testimony; instead, Mr. Blitzer's trial testimony is included as its Exhibit 1.  Because the Complaint filed with the Court repeatedly refers to Mr. Blitzer's testimony and not to Ms. Blitzer's testimony, it seems likely that Ms. Blitzer's testimony was erroneously attached to the Complaint in place of Mr. Blitzer's.

and against Mr. Ross in that case, and that Messrs. Ross and Jackson were indicted in the criminal case. See Global Network Communications, 458 F.3d at 157; Elek, 2011 WL 4472027, at *3. I will consider the affidavit only insofar as it identifies the exhibits.

Mr. Stavis' Motion includes a declaration from Kevin Schlosser. (Declaration of Kevin Schlosser dated Nov. 3, 2011 ("Schlosser Decl.")). This declaration attaches as exhibits (1) the Complaint with its appended material and (2) the transcript of Mr. Ross' plea allocution in the New York County Supreme Court criminal case in which he and Mr. Jackson were defendants. (Schlosser Decl., Exhs. A, B). As with the Douglas Affidavit, I will rely on the Schlosser Declaration only to identify its attachments. Similarly, I will consider the plea allocution merely for the fact that Mr. Ross pled guilty to the charge of attempted grand larceny in the second degree. See Global Network Communications, 458 F.3d at 157; S.E.C. v. Aragon Capital Advisors, LLC, No. 07 Civ. 909, 2011 WL 3278907, at *10 (S.D.N.Y. July 26, 2011) ("A court also may take judicial notice of indisputable facts, such as a guilty plea.") As I am not considering anything that is not deemed part of the Complaint, there is no need to convert these motions to dismiss into summary judgment motions. See Fed. R. Civ. P. 12(d) (stating that if matters outside the pleadings are considered on a 12(b)(6) motion, the "motion must be treated as one for summary judgment").

Allegations in the Complaint

For the purposes of these motions, the allegations from the plaintiff's Complaint are assumed to be true.

A.   Background

The plaintiff, Mr. Jackson, is an attorney who has at various times represented Mr. Ross. (Compl., ¶ 22). Mr. Blitzer, who was an employee of the investment firm Blackstone Group ("Blackstone") during the relevant period, is married to Mr. Ross' estranged daughter, Ms. Blitzer. (Compl., ¶¶ 24, 28). Mr. Stavis is an attorney who represented Mr. Blitzer in connection with certain dealings with Mr. Ross. (Compl., ¶ 35).

Although Mr. Ross and his daughter, Ms. Blitzer, were estranged, Mr. Blitzer continued to communicate with Mr. Ross, and repeatedly gave Mr. Ross many thousands of dollars for business ventures and other purposes. (Compl., ¶¶ 24-26). Mr. Ross asked Mr. Blitzer for additional funds for a business venture in December 2007, and also indicated that he would like to see Mr. and Ms. Blitzer's children -- his grandchildren. (Compl., ¶ 27). Mr. Blitzer and Mr. Ross had multiple conversations about the money. (Compl., ¶¶ 27-28). During a visit in April 2008 at which Mr. Blitzer introduced Mr. Ross to a Blackstone employee who was involved in business relevant to Mr. Ross' ventures, Mr. Ross again asked to see his grandchildren. (Compl., ¶ 28). Mr. Blitzer eventually decided to stop giving Mr. Ross money, although Mr. Ross believed that he had been promised an additional $50,000. (Compl., ¶ 29).

B.    <u>The Plaintiff's Involvement in Negotiations</u>

Prior to 1998, Mr. Blitzer had dealt with Mr. Jackson, who
held in escrow a payment of $120,000 that Mr. Blitzer had provided
for Mr. Ross to purchase an option to buy an apartment. (Compl.,
¶¶ 22, 47). When Mr. Ross was unsuccessful in the purchase, Mr.
Jackson upset Mr. Blitzer by giving the money to Mr. Ross rather
than returning it to Mr. Blitzer. (Compl., ¶ 47). However, Mr.
Jackson was unaware of the more recent monetary dealings between
Mr. Ross and Mr. Blitzer or of the details of the disagreements
among the family. (Compl., ¶¶ 30, 33). Nonetheless, in June 2008,
Mr. Ross asked the plaintiff to meet with Mr. Blitzer in London,
where Mr. Blitzer lived. (Compl., ¶ 30). The plaintiff informed
Mr. Blitzer that to avoid litigation Mr. Ross was willing to enter
into a consent decree, which would be approved by an appropriate
court, and stated that Mr. Ross would not file a petition for
visitation with his grandchildren. (Compl., ¶¶ 31, 34).

After the plaintiff returned to New York, he contacted Mr.
Blitzer by telephone. (Compl., ¶ 35). During this call, Mr.
Blitzer played a taped telephone conversation between Mr. Blitzer
and an angry and presumably drunk Mr. Ross in which Mr. Ross
appeared to be arguing with Mr. Blitzer about his refusal to allow
Mr. Ross to visit with his grandchildren. (Compl., ¶ 35). Mr.
Jackson thereafter suggested that he and Mr. Blitzer's attorney
could confer about the proposed consent decree. (Compl., ¶ 35).

Over one month later, on July 30, 2008, Mr. Stavis contacted
Mr. Jackson to ask what Mr. Ross wanted in exchange for signing the

consent decree and ceasing what Mr. Stavis called "harassment" of the Blitzers. (Compl., ¶¶ 36, 61 & Exh. 2 at 379-80). Mr. Jackson asserted that he was not aware of any harassment. (Compl., ¶¶ 36, 61). He then spoke to Mr. Ross, who denied engaging in harassment and offered that, in exchange for $5.5 million, he would not seek visitation rights, contact Mr. Blitzer at his place of business, or complain to anyone at Blackstone about Mr. Blitzer or the situation involving the grandchildren. (Compl., ¶¶ 36, 61).

In a phone call on August 5, 2008, the plaintiff related Mr. Ross' offer to Mr. Stavis, who memorialized it in a letter the same day. (Compl., ¶¶ 37, 62-63 & Exh. 2 at 381, 383). Mr. Jackson forwarded the letter to Mr. Ross, who insisted that he wanted $5.5 million to waive his visitation rights and another $5.5 million to promise not to call Mr. Blitzer or anyone else at Blackstone. (Compl., ¶ 37). Mr. Jackson reported this turn of events in a letter Mr. Stavis received on August 6, 2008. (Compl., ¶ 37, 64 & Exh. 2 at 386-87). The plaintiff's letter stated that Mr. Ross would waive his rights of communication and visitation with Ms. Blitzer and the grandchildren for $5.5 million; that he would grant Mr. Blitzer "an option for the benefit of [] Blackstone" for an additional $5.5 million; and that each offer must be accepted by August 15, 2008. (Compl., Exh. 2 at 387-89). Mr. Stavis responded in writing that his clients would not pay that much money, but that they would be willing to have a meeting to attempt to resolve the dispute. (Compl., ¶ 37).

Mr. Stavis then called Mr. Jackson and told him that Mr. Ross

must stop harassing Mr. Blitzer.  (Compl., ¶ 38).   Mr. Jackson repeated that he knew of no harassment.  (Compl., ¶ 38).  He later contacted Mr. Ross, who again denied any harassing behavior. (Compl., ¶ 38).  The plaintiff related Mr. Ross' denial in a letter to Mr. Stavis.  (Compl. ¶ 38).

Meanwhile, Mr. Stavis received and listened to a tape that included recordings of phone messages that Mr. Ross had left for Mr. Blitzer.  (Compl., Exh. 2 at 391).  After hearing the tape, Mr. Stavis contacted defendant Schulman, an assistant district attorney for New York County, played her the voicemails, and faxed her some e-mails that Mr. Blitzer had received from Mr. Ross.  (Compl., ¶ 40 & Exh. 2 at 392-93).   In response, Ms. Schulman authorized an investigation of Mr. Jackson.  (Compl., ¶ 40).

On August 12, 2008, Mr. Stavis, Mr. Blitzer, and Ms. Blitzer met with three more individuals from the District Attorney's Office -- defendants Seewald and Wigdor and an as-yet unidentified defendant.  (Compl., ¶ 41; Douglas Aff., Exh 1 at 201).  The participants planned to set up a meeting among Mr. Ross, Mr. Jackson, Mr. Stavis, and Mr. Blitzer.  (Compl., ¶ 42).   The District Attorney's Office also began recording Mr. Stavis' phone conversations with Mr. Jackson.  (Compl., ¶ 48).

Mr. Stavis received a letter from Mr. Jackson on August 13, 2008, suggesting a meeting date of August 18, 2008, conditioned on Mr. Blitzer's commitment to pay Mr. Ross $5.5 million in advance. (Compl., Exh. 2 at 396).   Mr. Stavis responded with a letter rejecting the preconditions and the August 15 deadline and refusing

to pay Mr. Ross $5.5 million to stop his harassment. (Compl., Exh. 2 at 397).  However, the letter also stated that Mr. Blitzer was open to a reasonable settlement. (Compl., Exh. 2 at 397-98).  Mr. Jackson's response again denied that Mr. Ross had harassed the Blitzers or Blackstone, asserted that Mr. Ross was amenable to a global settlement, and suggested a date for the meeting. (Compl., Exh. 2 at 398-99).

The meeting took place on August 21, 2008 (the "August 21 Meeting"). (Compl., ¶ 49).  Mr. Blitzer and Mr. Stavis met with the District Attorney Defendants prior to the negotiations to be outfitted with electronic recording devices. (Compl., ¶ 49; Douglas Aff., Exh. 1 at 201-03, 381).  They were instructed to listen more than speak and to give Mr. Ross every opportunity to abandon his course of action. (Compl., ¶ 50; Douglas Aff., Exh. 1 at 202-03).  During the meeting, at which Mr. Jackson was present, Mr. Blitzer offered to settle the dispute for $250,000. (Douglas Aff., Exh. 1 at 379, 429-30).  Mr. Blitzer and Mr. Ross then agreed that Mr. Blitzer would give Mr. Ross $50,000 in "good faith money."[3] (Douglas Aff., Exh. 1 at 433).  At some point after the meeting, Mr. Jackson went to the District Attorney's Office at the invitation of defendant Wigdor, where defendant Seewald informed him that he was being arrested. (Compl., ¶ 56).  The arrest was effected pursuant to legal process. (Compl., ¶ 141).

---

[3] This "agreement" was illusory, as Mr. Blitzer did not intend to follow through with the payment. (Douglas Aff., Exh. 1 at 379-80).

C.   <u>Alleged False Testimony</u>

Mr. Stavis later testified before the grand jury.   The plaintiff alleges that Mr. Stavis, with the assistance of defendants Seewald and Kitsis, gave the following false testimony:

> (1) that during the July 30, 2008 telephone call, Mr. Jackson stated that Mr. Ross "would want compensation for stopping his harassment of the Blitzer family."
> (2) that during the August 5, 2008 call, Mr. Jackson stated that Mr. Ross "would stop the harassment of the Blackstone Group" as a "bonus."
> (3) that Mr. Jackson's August 6, 2008 letter stated that Mr. Ross would stop harassing the Blackstone Group for an additional amount of money, rather than as a "bonus."

(Compl., ¶¶ 62, 64 & Exh. 2 at 380, 382).

Mr. Jackson points out that, in response to questions from the Assistant District Attorney and certain grand jurors, Mr. Stavis stated that Mr. Jackson did not actually use the word "harass" or "harassment," but, rather, that Mr. Stavis had used it himself in his conversations with Mr. Jackson.   (Compl., ¶¶ 63, 65, 66 & Exh. 2 at 390-91, 399-400, 409-10).   Mr. Stavis makes the same point in his trial testimony.   (Compl., ¶ 67 & Exh. 3 at 550-52).   The plaintiff further asserts that "defendants David and Allison Blitzer and Roger Stavis continued to fabricate evidence and conceal exculpatory evidence concerning Mr. Jackson's involvement up and through the trial."[4]   (Compl., ¶ 74).

---

[4] The Complaint contains other allegations in the section outlining the six "counts" against the Private Defendants.   These allegations assert charges such as that the Private Defendants "conspired with" certain District Attorney Defendants "to arrest the plaintiff"; that the Private Defendants and certain District Attorney Defendants "act[ed] individually and in concert, in a devious and clandestine manner to fabricate evidence and conceal material, exculpatory and impeachment evidence" and to "fail to conduct a constitutionally adequate investigation"; and that "the

The grand jury indicted Mr. Jackson and Mr. Ross for attempted grand larceny in the second degree, in violation of New York Penal Law ("Penal Law") §§ 110 and 155.40(1), and grand larceny in the third degree, in violation of Penal Law § 155.35. (Douglas Aff., Exh. 4).  Mr. Ross pled guilty to attempted grand larceny in the second degree, in satisfaction of the indictment.  (Schlosser Decl., Exh. B at 7, 12).  A jury acquitted Mr. Jackson of the charges. (Compl., ¶¶ 103, 111).

D.   Causes of Action Against the Private Defendants

The plaintiff charges the Private Defendants with depriving him of his constitutional rights under color of state law by "acting in concert with and conspiring with" the District Attorney Defendants

> (1) to "falsely arrest[] and illegally seize[] him";
> (2) to "fabricate evidence and conceal . . . evidence . . . [and] fail[] to conduct a constitutionally adequate criminal investigation";
> (3) to maliciously prosecute him; and
> (4) to maliciously abuse legal process "to obtain a collateral objective outside the legitimate ends of the legal process."

(Compl., Counts I, II, III, VI).

In addition, the plaintiff interposes a free-floating Section

_____

defendants acted individually and in concert to cause Mr. Jackson to be arrested and prosecuted." (Compl., ¶¶ 86, 91, 103).  No additional details are provided about the conspiracy, fabrication, concealment, or failure to investigate.  These allegations, which are littered throughout the "counts" section of the Complaint, are merely conclusory and add nothing to the recitation of facts here. They therefore cannot be used to defeat a motion to dismiss.  See, e.g., Iqbal, 556 U.S. at __, 129 S. Ct. at 1949-50; Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) ("[A] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.")

1983 conspiracy claim that all of the defendants conspired to deprive him of his Fourth and Fourteenth Amendment rights. (Compl., Count IV).  Finally, he alleges a state law malicious prosecution claim.[5]  (Compl., Count VII).

Discussion

    A.   Elements of a Claim under Section 1983

Five of the plaintiff's six claims against the Private Defendants are brought under Section 1983.  Section 1983 does not, itself, provide substantive rights.  Rather, it merely "authorizes a cause of action based on the deprivation of civil rights guaranteed by other Acts of Congress" and the Constitution. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 618 (1979); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established

---

[5] The plaintiff alleges another Section 1983 cause of action: a failure to "intercede on behalf of Mr. Jackson to prevent his false arrest, malicious prosecution and deprivation of liberty without due process of law," (Compl., Count V). However, the plaintiff does not respond to Mr. Stavis' argument that Count V should be dismissed against him.  Thus, Mr. Jackson has abandoned this claim against Mr. Stavis.  See Anwar v. Fairfield Greenwich Ltd., __ F. Supp. 2d __, __, 2011 WL 5282684, at *2 (S.D.N.Y. Nov. 2, 2011).  Moreover, the plaintiff has not alleged the personal involvement of any of the Private Defendants in this cause of action, as only the District Attorney Defendants are mentioned or referenced in the section of the Complaint related to it. (Compl., ¶¶ 134-39).  I therefore assume that the plaintiff did not intend to include the Private Defendants in this count.  Even if he did, the cause of action should be dismissed against the Private Defendants because of the failure to allege their personal participation in the alleged deprivation.  See, e.g., Fisk v. Letterman, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) (dismissing complaint against certain defendants because it contained no specific allegations against these defendants).

elsewhere."). In order to state a claim under the statute, a plaintiff must allege that he has been deprived of his civil rights by a state actor. 42 U.S.C. § 1983; see also Torraco v. Port Authority of New York & New Jersey, 615 F.3d 129, 135 (2d Cir. 2010) ("[Section 1983] allows parties to seek damages against state actors for alleged violations of federal rights."); Fisk, 401 F. Supp. 2d at 376 ("[A] claim under § 1983 is aimed at state action and state actors." (internal quotation marks and citation omitted)).

Although the statute is applicable only to those acting "under color of state law" who violate federal rights, it does not "require that the defendant be an officer of the State." Dennis v. Sparks, 449 U.S. 24, 27 (1980). Rather, a private actor's conduct may be considered state action if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295 (2001) (internal quotation marks omitted). "State action may properly be found . . . where the private actor 'operates as a willful participant in joint activity with the State or its agents' . . . ." Tancredi v. Metropolitan Life Insurance Co., 316 F.3d 308, 313 (2d Cir. 2003) (quoting Brentwood Academy, 531 U.S. at 296). Thus, "[a] private actor will be found to have acted jointly with a state actor if he and the state actor 'somehow reached an understanding' to violate the plaintiff's civil rights." Fisk, 401 F. Supp. 2d at 376 (quoting Vickery v. Jones, 100 F.3d

14

1334, 1344 (7th Cir. 1996)); Anilao v. Spota, 774 F. Supp. 2d 457, 498 (E.D.N.Y 2011) ("To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." (internal quotation marks omitted)). Moreover, the action attributable to the state must cause a deprivation of federal rights. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) ("A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."); Missere, 2011 WL 6030665, at *17 ("In a § 1983 action, the plaintiff must also establish that the party acting under color of state law caused the alleged deprivation of a federal right.").

      1.   Allegations Against Mr. and Ms. Blitzer

According to the Complaint, after Mr. Stavis alerted the New York County District Attorney's Office to Mr. Ross' voicemails and e-mails to Mr. Blitzer, he, along with Mr. Blitzer and Ms. Blitzer, met with certain District Attorney Defendants during which "'a course of action [] was planned'" to "set up a meeting between David Blitzer and Ross and their respective attorneys." (Compl., ¶ 42 (alteration in original) (quoting Compl., Exh. 2 at 394)). Prior to the August 21 Meeting, the District Attorney Defendants gave Mr. Blitzer and Mr. Stavis general instructions regarding how

to comport themselves and wired them with recording devices. (Compl., ¶¶ 49-50).  During the meeting, Mr. Blitzer offered, and Mr. Ross accepted, a promise to pay $250,000, in return for which Mr. Ross would not seek visitation with the grandchildren and would refrain from contacting the Blitzers or Blackstone.  (Compl., ¶¶ 43, 45; Douglas Aff., Exh. 1 at 379, 429-30, 434).

Mr. Jackson asserts that the August 21 Meeting was "orchestrated to set [him] up" and "attempt to induce [him] to commit an offense he would otherwise be unlikely to commit." (Compl., ¶¶ 44, 46).  As support, he states that the offer of payment "should have ended the situation" because the objective of "having Ross cease in his request to seek visitation with his grandchildren and thereby have no contact with the Blitzers[] had been reached." (Compl., ¶ 43).  Mr. Jackson apparently infers from the fact that the "situation" did not end with the offer of payment that there must have been a different motive.  Mr. Jackson further asserts that Mr. Ross "was not asking for money to stop harrassing Blitzer," but, rather, was "acting out" because Mr. Blitzer "apparently no longer wanted to give [him] money."[6] (Compl., ¶ 45 (emphasis in original)).  Mr. Jackson further alleges that both Mr. and Ms. Blitzer "continued to fabricate evidence and conceal exculpatory evidence."  (Compl., ¶ 74).

---

[6] Mr. Jackson's insistence that the payment had nothing to do with harassment, but was merely a demonstration of Mr. Ross' "acting out" does not square with the fact that Mr. Ross pled guilty to attempted grand larceny in the second degree in connection with this promised payment. (Schlosser Decl., Exh. B at 4, 12).

These allegations fail to state a claim against either Mr. Blitzer or Ms. Blitzer.  As to Ms. Blitzer, there are only two allegations: (1) that she was present in the meeting with certain District Attorney Defendants in which the August 21 Meeting was planned; and (2) that she "continued to fabricate evidence and conceal exculpatory evidence."  (Compl., ¶ 74).   This second allegation is devoid of details and merely conclusory.   The allegation that Ms. Blitzer attended a meeting with staff from the District Attorney's Office does not create "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Academy, 531 U.S. at 295 (internal quotation marks omitted).   "[A] private party will not be deemed a state actor merely because he communicated with a state actor, reported a crime, or cooperated with state officials." Anilao, 774 F. Supp. 2d at 501-02.   Here, there is no allegation that Ms. Blitzer cooperated in any action with state authorities at all.  She merely attended a meeting with law enforcement personnel.  Mr. Jackson has not alleged that Ms. Blitzer was acting under color of state law, and therefore the Section 1983 claims against her should be dismissed.

The Section 1983 claims against Mr. Blitzer should be dismissed as well, because the Complaint does not allege that Mr. Blitzer and the District Attorney's Office had an "understanding to violate [Mr. Jackson's] civil rights" or that joint action caused a violation of those rights.  Fisk, 401 F. Supp. 2d at 376

17

(internal quotation marks omitted); <u>Annis</u>, 136 F.3d at 245.

Mr. Jackson is quite clear:  Mr. Blitzer and Mr. Stavis and the District Attorney Defendants planned a "course of action" to "set up Mr. Jackson" to "attempt to induce him to commit an offense he would otherwise be unlikely to commit." (Compl., ¶¶ 39, 42, 44, 46, 125).  This allegation is based on (1) the meeting with certain District Attorney defendants prior to the August 21 Meeting; (2) the preparation for and recording of the August 21 Meeting; (3) the fact that August 21 Meeting did not end as soon as Mr. Ross had agreed to take money to refrain from contacting the Blitzers, and (4) a grudge Mr. Blitzer allegedly has against Mr. Stavis from a business deal some time prior to 1998.  While it may be <u>possible</u> that this is evidence of a nefarious plan among the defendants, the allegations do not "nudge[]" Mr. Jackson's claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Instead, the Complaint indicates that the Blitzers and Mr. Stavis contacted the District Attorney's Office because they were concerned about Mr. Ross' behavior, including his angry phone calls and e-mails. (Compl., ¶¶ 35, 40; Douglas Aff., Exh. 1 at 148-75). The Complaint also states that it was defendant Schulman who decided to investigate Mr. Jackson. (Compl., ¶ 40).  These facts undermine the plaintiff's theory that the Private Defendants were engaged in a conspiracy to "set up" Mr. Jackson.

Moreover, even if the plaintiff's allegations met the plausibility standard, they would fail to state a claim.  What the plaintiff has alleged is a plan to entrap him, using language that

closely tracks the New York statute defining the affirmative defense. See N.Y. Penal Law § 40.05 (entrapment occurs when a defendant is "induced" to engage in proscribed conduct by means of methods creating "a substantial risk that the offense would be committed by a person not otherwise disposed to commit it"). However, entrapment is not a constitutional offense and cannot be the basis for a Section 1983 claim. See United States v. Russell, 411 U.S. 423, 431-32 (1973); DiBlasio v. City of New York, 102 F.3d 654, 656-67 (2d Cir. 1996) ("While entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation." (internal quotation marks omitted)); see also Pinter v. City of New York, 448 Fed. App'x 99, 105 n.5 (2d Cir. 2011) (quoting DiBlasio); Stokes v. Gann, 498 F.3d 483, 484-85 (5th Cir. 2007) (collecting cases from the Second, Third, Sixth, Seventh, Ninth, and Tenth Circuits); Almonte v. Florio, No. 02 Civ. 6722, 2004 WL 60306, at *3 (S.D.N.Y. Jan. 13, 2004) (citing DiBlasio and collecting cases). Thus, the alleged agreement to attempt to entrap Mr. Jackson was not an agreement to violate his civil rights. Nor is it reasonable to infer from Mr. Jackson's pointed allegations of a scheme to entrap him that the defendants were actually planning to arrest and prosecute him without probable cause. If the entrapment were to succeed as allegedly planned, the defendants would have had all the probable cause they needed, because Mr. Jackson would have committed a crime. Importantly, an allegation of entrapment does not vitiate probable cause. It is irrelevant to the analysis of

19

whether a person was arrested or prosecuted without probable cause, which is the core of Mr. Jackson's complaints.[7]  See Pinter, 448 Fed. App'x at 105 n.5 (refusing to take into account plaintiff's charge of entrapment in determining whether he was arrested without probable cause); see also Kramer v. Village of North Fond du Lac, 384 F.3d 856, 866 (7th Cir. 2004) ("Entrapment is not part of our Fourth Amendment probable-cause-to-arrest analysis." (internal quotation marks omitted)); Labensky v. County of Nassau, 6 F. Supp. 2d 161, 177 (E.D.N.Y. 1998) (rejecting proposition that "a successful entrapment defense strips an otherwise lawful arrest of probable cause"), aff'd 173 F.3d 845 (2d Cir. 1999).  Moreover, other than the conclusory allegations in the section of the Complaint outlining the counts against the defendants, there are no allegations that Mr. Blitzer and the District Attorney Defendants agreed on a scheme to arrest and prosecute Mr. Jackson without probable cause.  The plaintiff has therefore not properly alleged a Section 1983 claim against Mr. Blitzer based on such conduct. See Fisk, 401 F. Supp. 2d at 376  ("A private actor will be found to have acted jointly with a state actor if he and the state actor 'somehow reached an understanding' to violate the plaintiff's civil rights." (quoting Vickery, 100 F. 3d at 1344)).

Assuming, for the moment, that Mr. Blitzer and the District

---

[7]  Mr. Jackson also alleges that the District Attorney Defendants did not adequately investigate the charges brought against him.  However, the plaintiff has conceded that the Private Defendants had no obligation to investigate.  (Opp. to Blitzer Mot. at 25; Opp. to Stavis Mot. at 24).  Therefore, these allegations are irrelevant to the Private Defendants.

Attorney Defendants had an agreement to violate Mr. Jackson's civil rights, the plaintiff has failed to allege that this conduct actually caused a constitutional injury.  See Annis, 136 F.3d at 245; Missere, 2011 WL 6030665, at *17 ("In a § 1983 action, the plaintiff must also establish that the party acting under color of law caused the alleged deprivation of a federal right."). Causation is established when a constitutional injury is "fairly traceable to [an] actual violation of [the plaintiff's] civil rights." Townes v. City of New York, 176 F.3d 138, 141 (2d Cir. 1999); see also Monroe v. Pape, 365 U.S. 167, 187 (1961) ("[Section 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."), overruled on other grounds by Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  Mr. Jackson's arrest and prosecution are not fairly traceable to Mr. Blitzer's participation in the August 21 Meeting and its lead-up. Purportedly, Mr. Blitzer, in concert with the other defendants, sought to cause Mr. Jackson to commit an offense he would not otherwise commit.  However, it is Mr. Jackson's position that the purported attempted entrapment failed -- "the transcript from [the August 21 Meeting] reveals that Mr. Jackson was merely trying to reach a mutual agreement between the clients and does not reveal Mr. Jackson trying to assist his client in extorting money from Mr. Blitzer." (Compl., ¶ 52).  According to the allegations of the Complaint, then, the meeting had no relevant effect: there was not probable cause to arrest Mr. Jackson either before or after the

21

meeting.   The Complaint indicates that the effect on Mr. Jackson would have been the same -- arrest and prosecution without probable cause -- even in the absence of the meeting.   Thus, Mr. Blitzer's participation cannot have <u>caused</u> the alleged constitutional injury. <u>See</u> <u>Zahrey v. Coffey</u>, 221 F.3d 342, 352 n.8 (2d Cir. 2000) (noting that alleged wrongdoer could avoid liability when deprivation of liberty would have occurred "even in the absence of the antecedent misconduct," because "'but for' causation could be claimed to be lacking.").

Because Mr. Jackson has failed to allege sufficiently a cause of action under Section 1983 against either Mr. Blitzer or Ms. Blitzer, I recommend that the federal claims against them be dismissed.

### 2.   Allegations Against Mr. Stavis

The allegations that Mr. Stavis acted in concert with the District Attorney Defendants are more numerous than those against either Ms. Blitzer or Mr. Blitzer.

According to the Complaint, the first contact by any of the Private Defendants with any of the District Attorney Defendants occurred when Mr. Stavis approached Ms. Schulman with Mr. Ross' voice mails and e-mails.   (Compl., ¶ 40).   However, it is well-settled that "'merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.'" <u>Valez v. City of New</u>

York, No. 08 Civ. 3875, 2008 WL 5329974, at *4 (S.D.N.Y. Dec. 16, 2008) (quoting Vazquez v. Combs, No. 04 Civ. 4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004)); see also Ginsberg v. Healey Car & Truck Leasing, 189 F.3d 268, 272-73 (2d Cir. 1999) ("Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who act under color of law."). Thus, this incident cannot be a basis for finding that Mr. Stavis was acting under color of state law.

The bulk of the allegations against Mr. Stavis regarding the investigation closely track the allegations against Mr. Blitzer (Compl., ¶¶ 41-46, 49-51), and they likewise fail to state a claim against Mr. Stavis. As with the allegations against Mr. Blitzer, the allegations regarding Mr. Stavis' participation in the investigation raise at most the specter of an agreement to entrap Mr. Jackson, which, as discussed above, is not a constitutional violation. Thus, Mr. Stavis' participation in the investigation, including the August 21 Meeting, did not constitute a deprivation of Mr. Jackson's civil rights under color of state law.

However, in addition to the allegations outlined above, the plaintiff also alleges that Mr. Stavis repeatedly lied to the grand jury. His purported lies consist of using the word "harassment" during his grand jury testimony in ways that the plaintiff asserts made it seem as if Mr. Jackson himself had used the word, thus indicating that the plaintiff was aware of Mr. Ross' illegal conduct. (Compl., ¶¶ 62, 64).

23

But the plaintiff has not properly asserted joint action among the District Attorney Defendants and Mr. Stavis.  That is, he has not adequately alleged that the District Attorney Defendants and Mr. Stavis shared the unlawful goal of depriving Mr. Jackson of his rights by prosecuting him based on false grand jury testimony.  See Anilao, 774 F. Supp. 2d at 498.  Mr. Jackson asserts that "the defendants' [sic] conspired to . . . present[] a case to the Grand Jury which was full of false testimony, supposition, innuendo and lies regarding knowledge and motives which could not be attributed to [him]." (Compl., ¶ 72).  However, the actual facts presented in the Complaint eviscerate this conclusion.  Far from showing a plan to present false testimony through Mr. Stavis to the grand jury, the Complaint demonstrates that defendant Seewald helped to clarify for the grand jurors that Mr. Jackson did not himself use the word "harassment" to describe Mr. Ross' conduct.  (Compl., ¶¶ 63, 65 & Exh. 2 at 390, 409-10).  Regarding the charge that Seewald "testifies through his leading questioning of Stavis that [the] universal settlement [mentioned in Jackson's August 14, 2008 letter] means ceasing to harass [] Blackstone," the record is clear that Seewald merely asked what Mr. Stavis believed the phrase meant.  (Compl., ¶ 69 & Exh. 2 at 399).  Moreover, the Complaint does not indicate when this alleged plan was hatched.  There is no allegation that it occurred during the August 12 Meeting, at which the defendants allegedly planned to entrap Mr. Jackson.  Indeed, there is no non-conclusory allegation that Mr. Stavis cooperated with any of the District Attorney Defendants except insofar as he

24

aided the investigation preceding the August 21 Meeting.  (Compl.,
¶ 60).   The Complaint itself thus undermines the conclusory
allegation that the District Attorney Defendants conspired with Mr.
Stavis to present false testimony to the grand jury.  Mr. Jackson
has not shown that Mr. Stavis was "jointly engaged with state
officials in the challenged action." Dennis, 449 U.S. at 27-28.

     The federal claims against Mr. Stavis should therefore be
dismissed.

     B.   Substantive Claims

     Even if it were unnecessary to plead the predicates for
Section 1983 liability discussed above, I would recommend
dismissing the claims against the Private Defendants, including the
state law cause of action, for the independent reason that the
pleading of each of the substantive causes of action is deficient.[8]

          1.   Conspiracy

     The analysis of a Section 1983 conspiracy claim is "very
similar," to the analysis of whether a private actor has jointly
engaged with the state so that his conduct can be attributed to the
state. Ciambriello, 292 F.3d at 324.

> In order to survive a motion to dismiss on his § 1983
> conspiracy claim, [the plaintiff] must allege (1) an
> agreement between a state actor and a private party; (2)
> to act in concert to inflict an unconstitutional injury;
> and (3) an overt act done in furtherance of that goal
> causing damages.

Id. at 324-25.

     As should be clear from the discussion above, Mr. Jackson's

---

     [8] I will address the substantive causes of action in a
different order than they are presented in the Complaint.

allegations against each of the Private Defendants fail to establish a conspiracy. As to Ms. Blitzer, they fail to establish any agreement or any overt act. As to Mr. Blitzer, the only agreement alleged among him and the District Attorney Defendants was not one to inflict an unconstitutional injury. The same deficiency frustrates the plaintiff's allegations against Mr. Stavis.

    2.  Failure to Investigate; Fabrication of Evidence;
        Withholding of Material, Exculpatory, and
        Impeachment Evidence (Count II)

This is a puzzling claim, made more so by the plaintiff's arguments in his opposition to the motions to dismiss. The Complaint does not include any facts indicating that any of the Private Defendants failed to investigate. There is only one allegation that colorably indicates that evidence was withheld by the Private Defendants: Mr. Jackson asserts that information favorable to him -- such as that his only goal was to broker an agreement between Mr. Blitzer and Mr. Ross and that he asserted that any agreement would require court approval -- "was never brought out by Mr. Blitzer or . . . [Mr.] Stavis." (Opp. to Blitzer Mot. at 26; Opp. to Stavis Mot. at 25). However, the Complaint undermines the notion that any participant in the investigation or prosecution of Mr. Jackson was unaware that Mr. Jackson had made such statements, because (1) the August 21 Meeting at which these statements were allegedly made was recorded and (2) Mr. Blitzer testified to these statements at trial. (Douglas Aff., Exh. 1 at 390-91, 407). More importantly, however, the plaintiff

admits in his opposition papers that the Private Defendants had no duty to investigate or to turn over potentially exculpatory evidence. (Opp. to Blitzer Mot. at 25; Opp. to Stavis Mot. at 24). This concession is well-taken. <u>See, e.g.</u>, <u>Moldowan v. City of Warren</u>, 578 F.3d 351, 381 (6th Cir. 2009) (noting that obligation to disclose exculpatory information falls on prosecutor and, to some extent, police, and collecting cases from First, Second, Fifth, Seventh, and Eleventh Circuits). Because the Private Defendants had no such duties, they cannot be faulted for failing to perform them.

The Complaint does allege that the Private Defendants, along with the District Attorney Defendants, "fabricate[d] evidence"; "produced and fabricated false and misleading statements regarding Mr. Jackson, his knowledge and his intention"; "fabricated evidence during the investigation"; and "fabricated evidence during the prosecution regarding Mr. Jackson's knowledge of Mr. Ross' conduct and . . . that Jackson had acted with Ross to instill fear in Blitzer." (Compl., ¶¶ 91-92, 97). However, these allegations are conclusory and unsupported. The plaintiff does not identify what evidence was fabricated. Indeed, in his Opposition to the Blitzers' Motion, Mr. Jackson seems to hang this cause of action on an assertion that Mr. Blitzer did not reveal to the District Attorney Defendants that he had not named Mr. Jackson in the civil action he filed against Mr. Ross. (Opp. to Blitzer Mot. at 24-25). This assertedly provides evidence supporting "an inference of malice and . . . an inference that the motivation was not to seek

the ends of justice but rather was to punish Mr. Jackson for acting on Mr. Ross' behalf."  (Opp. to Blitzer Mot. at 25).  These inferences, even if reasonable, do not amount to a deprivation of liberty.  See Zahrey, 221 F.3d at 348 ("The manufacture of false evidence, 'in and of itself,' . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right.").  These allegations fail to state a claim against the Private Defendants.

Finally, the Complaint includes the charge that Mr. Stavis presented false evidence to the grand jury by implying that Mr. Jackson had used the word "harassment" to describe Mr. Ross' behavior towards the Blitzers and Blackstone.  However, as noted above, any possible perception that Mr. Jackson had used such language was dispelled while Mr. Stavis was being examined before the grand jury.  (Compl., ¶¶ 63, 65, 69 & Exh. 2 at 390, 399, 409-10).  Thus, Mr. Stavis' allegedly false testimony cannot have caused any deprivation of Mr. Jackson's civil rights.

For these reasons, I recommend that this claim be dismissed against the Private Defendants.

### 3.  False Arrest (Count I)

False imprisonment, "sometimes colloquially called . . . 'false arrest,'" Cameron v. Fogarty, 806 F.2d 380, 386 (2d Cir. 1986), "is an unlawful detention contrary to the will of the person detained, accomplished with or without process of law." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998) (internal quotation marks omitted).  "Under New York law, the elements of a false

28

imprisonment claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (alteration in original, internal quotation marks omitted).

A confinement is privileged if it is "pursuant to a warrant or with probable cause or immunity protection." Curley, 153 F.3d at 13.  The existence of probable cause "is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)(internal quotation marks and citation omitted).  Where an arrest is accomplished pursuant to legal process, such as a warrant, "there is 'a presumption that the arrest was issued on probable cause.'" Chase v. Town of Camillus, 247 A.D.2d 851, 852, 668 N.Y.S.2d 830, 831 (4th Dep't 1998) (quoting Broughton v. New York, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 94 (1975)); see also Anilao, 774 F. Supp. 2d at 511.  The presumption of probable cause can be overcome by showing that the legal process was "the result of fraud, perjury, or the suppression of evidence." Gisondi v. Town of Harrison, 72 N.Y.2d 280, 284, 532 N.Y.S.2d 234, 236 (1988); see also Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (to overcome the presumption of probable cause created by the issuance of a warrant, the plaintiff must show "that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the

29

allegedly false statement was necessary to the finding of probable cause" (internal quotation marks omitted)).

Here, the Complaint alleges, almost furtively, that Mr. Jackson was arrested pursuant to legal process procured by the District Attorney.[9] (Compl., ¶ 141). There are no non-conclusory allegations that such process was the product of fraud, perjury, suppression of evidence, or other action taken in bad faith.[10] (Compl., ¶¶ 140-46). Thus, Mr. Jackson has not overcome the presumption of probable cause.[11] As that is a complete defense, the false arrest count against the Private Defendants should be dismissed.[12]

---

[9] Only in the allegations relating to the malicious abuse of process count, but nowhere else in the Complaint, does the plaintiff allege that process was issued for Mr. Jackson's arrest. Of course, issuance of legal process is required in order to state a claim for abuse of process. However, the question of whether legal process issued for Mr. Jackson's arrest is also relevant to other causes of action included in the Complaint, most notably the cause of action for false arrest.

[10] As noted above, the alleged attempt at entrapment is irrelevant to the determination of whether there was probable cause to arrest Mr. Jackson. See Pinter, 448 Fed. App'x at 105 n.5; see also Kramer, 384 F.3d at 866; Labensky, 6 F. Supp. 2d at 177.

[11] The plaintiff argues, in relation to his malicious prosecution cause of action, that the defendant must raise and prove probable cause. (See Opp. to Stavis Mot. at 17 n.4). That is true when the plaintiff has been arrested or prosecuted without a warrant, which creates a presumption that probable cause was lacking. See, e.g., Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003). Here, however, a presumption of probable cause arises from the allegations in the Complaint. It is not, therefore, necessary for the defendants to raise the existence of probable cause as a defense.

[12] Because only the Private Defendants' Motions to Dismiss are before me, I express no opinion as to whether the false arrest claim, or any other claim in the Complaint, can survive as to the other defendants.

In addition, the plaintiff has not adequately alleged that the Private Defendants "intended to confine" him prior to his arrest. To plead intent, a plaintiff must allege facts that show that a civilian defendant confined, attempted to confine, or, if the arrest was made by law enforcement officials, "affirmatively procured or instigated" the arrest.  King v. Crossland Savings Bank, 111 F.3d 251, 256 (2d Cir. 1997).  Merely causing an official to take a plaintiff into custody is "not enough"; rather a "plaintiff must show that the defendant directed an officer to take him into custody."  Du Chateau v. Metro-North Commuter Railroad Co., 253 A.D.2d 128, 132, 688 N.Y.S.2d 12, 16 (1st Dep't 1999) (internal quotation marks and brackets omitted); see also Williams v. New York, 90 A.D.2d 861, 862, 456 N.Y.S.2d 491, 493 (3d Dep't 1982) (indicating that defendants must "essentially direct or order the [law enforcement official] to arrest" plaintiff).

Bacquie v. City of New York, No. 99 Civ. 10951, 2000 WL 1051904 (S.D.N.Y. July 31, 2000), cited by Mr. Jackson in his oppositions to both motions, is instructive.  In that case, after the plaintiffs entered a hotel lobby, they were approached by a security guard who asked to search their bags.  Id. at *1.  When the plaintiffs refused, the guard ordered them to leave.  Id.  They ignored him, ate breakfast at the hotel restaurant, and later left. Id.  When they re-entered the hotel later that day, a security guard again stopped them.  Id.  The police arrived and consulted with the hotel's security officers, after which the "police officers [] approached the plaintiffs and threatened to arrest them

31

unless they signed a 'Trespass Report' form provided by the hotel," which acknowledged that the signor's invitation to the public areas of the hotel had been revoked and warned the signor that returning to the hotel would subject her to prosecution for trespass. Id. When the plaintiffs refused to sign, the police arrested them. Id. The court held that the plaintiffs had properly alleged sufficient instigation to meet the intent requirement. See id. at *3.

These facts make clear that the police officers, after consultation with hotel security, attempted to force the plaintiffs, under threat of arrest, to sign a document provided by hotel security and for the benefit of the hotel. When the plaintiffs refused, the police followed through on the threat. The facts allow the reasonable inference that the police were acting as agents of hotel security, effectively "substitut[ing] the [private] defendants' judgment for their own." Anilao, 774 F. Supp. 2d at 511.

Similarly, in Alexanian v. New York State Urban Development Corp., 554 F.2d 15 (2d Cir. 1977), cited in Bacquie, 2000 WL 1051904, at *1-2, the Second Circuit found that the plaintiff had sufficiently stated a claim for false arrest against a private defendant. The complaint alleged that the plaintiff had been hit by a car driven by the private defendant. Id. at 17. When the plaintiff called the police to the scene, the driver collaborated with the police to arrest the plaintiff, and the police thereafter threatened the plaintiff with criminal charges unless he withdrew charges against the driver. Id. In Alexanian, too, the

allegations show that the state actors threatened the plaintiff with punishment for the purpose of benefitting the private defendant. Again, these facts allow the reasonable inference that the police were acting as the agents of the private defendant.

The defendant in <u>Mesiti v. Wegman</u>, 307 A.D.2d 339, 763 N.Y.S.2d 67 (2d Dep't 2003), informed the police that he was struck by the plaintiff's car and provided the license plate number. <u>Id.</u> at 339, 763 N.Y.S.2d at 67. The police tried unsuccessfully to contact the plaintiff, who was on vacation. <u>Id.</u> Informed upon his return that the police wanted to talk to him about the accident, the plaintiff contacted the police and offered to go to the station the following afternoon. <u>Id.</u> Although the police were actively investigating the accident and the plaintiff had already contacted them and volunteered to appear at the station, the defendant went to the plaintiff's place of business the next morning, contacted the police, and, accompanied by two officers, identified the plaintiff in front of a number of customers. <u>Id.</u> The police officers arrested him. <u>Id.</u> The appellate court held that on these facts, the jury could reasonably have found that the defendants instigated the arrest by acting with undue zeal to the point that the officers were not acting of their own volition. <u>Id.</u> at 340-41, 763 N.Y.S.2d at 70.

The situation that resulted in Mr. Jackson's arrest is quite different. The plaintiff notes that the Private Defendants met with the District Attorney Defendants and asserts that they planned to entrap him. (Opp. to Blitzer Mot. at 17; Opp. to Stavis Mot. at

23).   He then states that the District Attorney Defendants instructed Mr. Blitzer and Mr. Stavis regarding the August 21 Meeting and wired them with recording devices.  (Opp. to Blitzer Mot. at 17; Opp. to Stavis Mot. at 23).   Mr. Jackson further relates Mr. Stavis' use of the word "harassment" in front of the grand jury and at trial.  His conclusion is that "David Blitzer [and Roger Stavis] not only acted in concert with these public actors, [Mr. Blitzer and Mr. Stavis] acted as their agent."  (Opp. to Blitzer Mot. at 17; Opp. to Stavis Mot. at 23).  That may or may not be true, but it is not the standard.  In order to instigate an arrest, the private actor must direct the public actor's conduct, not the other way around.  See Du Chateau, 253 A.D.2d at 131-32, 688 N.Y.S.2d at 15-16; Williams, 90 A.D.2d at 862, 456 N.Y.S.2d at 493; see also Curley, 153 F.3d at 13-14 ("[T]he defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." (internal quotation marks omitted)); Anilao, 774 F. Supp. 2d at 511.  These allegations do not indicate that the District Attorney Defendants substituted the Private Defendants' judgment for their own, as is the case in Bacquie, Alexanian, and Mesiti.  Mr. Jackson's allegations, if true, would not demonstrate that the Private Defendants instigated his arrest.

### 4.   Malicious Prosecution (Counts III and VII)

Mr. Jackson's malicious prosecution claims should also be dismissed.  A malicious prosecution claim has four elements:

34

(1) that the defendant initiated a prosecution against
the plaintiff, (2) that the defendant lacked probable
cause to believe that the proceeding could proceed, (3)
that the defendant acted with malice, and (4) that the
prosecution was terminated in the plaintiff's favor.

Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir.

1999); see also Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123,

130 (2d Cir. 1997); Broughton, 37 N.Y.2d at 457, 373 N.Y.S.2d at

94.

"'Initiation' in the context of a malicious prosecution claim

'is a term of art.'" Anilao, 774 F. Supp. 2d at 505 (quoting Rohman

v. N.Y.C. Transit Authority, 215 F.3d 208, 217 (2d Cir. 2000)).

Although there is "a presumption that a prosecutor exercises

independent judgment in deciding whether to initiate . . . a

criminal proceeding, a plaintiff may overcome that presumption by

demonstrating that the defendant played an active role in the

prosecution, such as giving advice and encouragement or importuning

the authorities to act." Espada v. Schneider, 522 F. Supp. 2d 544,

553 (S.D.N.Y. 2007) (internal quotation marks and citations

omitted); see also Rohman, 215 F.3d at 217.  Merely reporting a

suspected crime to law enforcement officials, cooperating in a

prosecution, and giving testimony does not constitute initiation.

Id.; see also Maskantz v. Hayes, 39 A.D.3d 211, 213, 832 N.Y.S.2d

566, 569 (1st Dep't 2007) ("A malicious prosecution defendant must

do more than merely report a crime to police and cooperate in its

prosecution . . . .").

The relevant allegations assert that Mr. Stavis brought Mr.

Ross' behavior to the attention of the District Attorney's Office;

defendant Schulman authorized an investigation of Mr. Jackson; the District Attorney's Office was allowed to record Mr. Stavis' phone calls; the Private Defendants had a meeting with certain District Attorney Defendants prior to the August 21 Meeting; and Mr. Stavis and Mr. Blitzer participated in the August 21 Meeting, after which Mr. Jackson was arrested.

These allegations, if true, are not sufficient to show that any of the Private Defendants advised, encouraged, or importuned the District Attorney Defendants to act.  Rather, they are more like the allegations in Rotenberg v. Town of Mamaroneck, No. 08 Civ. 4703, 2010 WL 3468051 (S.D.N.Y. Aug. 24, 2010), where the private defendants filed in the town records a letter complaining about a neighbor's retaining wall, followed up with phone calls to officials of the town, hired an engineer to perform an inspection of the wall, and forwarded the engineer's report to the town's chief building inspector.  Id. at *1.  The town then issued a summons with a criminal information to the plaintiffs, after which the plaintiffs were tried and acquitted.  Id. at *2.  These facts did not allege that the private defendants initiated a judicial proceeding against the plaintiffs.  Id. at *3.  Even in the face of allegations that the summons was based solely on the phone calls and submitted engineer's report, id. at *2, the court held that the private defendants' actions "were more analogous to a civilian who reports a crime and cooperates in its prosecution, which does not give rise to a malicious prosecution claim," id. at *3 (citing Maskantz, 39 A.D.3d at 213, 832 N.Y.S.2d at 569).  Because the

36

Complaint here does not sufficiently allege that the Private Defendants did any more than report and cooperate, it fails to meet the requirements of the first element of a malicious prosecution claim.

Moreover, as noted above, Mr. Jackson alleges that his arrest was pursuant to legal process, thus raising the presumption of probable cause.  Probable cause is a complete defense to a claim of malicious prosecution, as it is to one of false arrest.  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  Because the plaintiff does not sufficiently allege that this process was procured by fraud, perjury, or suppression of evidence, he has not rebutted this presumption.  Therefore, Mr. Jackson cannot rely on his arrest to state a claim for malicious prosecution against the Private Defendants.

However, the plaintiff has alleged that Mr. Stavis testified falsely to the grand jury that returned Mr. Jackson's indictment. Like an arrest warrant, an indictment raises the presumption of probable cause unless it is rebutted.  See Colon v. City of New York, 60 N.Y.2d 78, 82-83, 468 N.Y.S.2d 453, 455-56 (1983); see also Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004).  In order rebut the prima facie evidence of probable cause raised by an indictment there must be a showing that the defendant has "'misrepresented or falsified the evidence or else kept back evidence which would affect the result'" of the proceedings before the grand jury.  Viza v. Town of Greece, 94 A.D.2d 965, 966, 463 N.Y.S.2d 970, 971 (4th Dep't 1983) (quoting Boose v. City of

Rochester, 71 A.D.2d 59, 69, 421 N.Y.S.2d 740, 748 (4th Dep't 1979)).  Mr. Stavis' allegedly false grand jury testimony was corrected while he was still testifying.  Thus, that testimony cannot have affected the grand jury's verdict.

Mr. Jackson's federal claim under Section 1983 must be dismissed for an independent reason.  As the Second Circuit has observed, "[t]he essence of malicious prosecution is the perversion of proper legal procedures."  Singer, 63 F.3d at 117 (internal quotation marks omitted.)  Therefore, "[t]o maintain a § 1983 claim for malicious prosecution under the Fourth Amendment, the deprivation of liberty -- the seizure -- must have been effected pursuant to legal process."  Id. at 116-17 (internal quotation marks omitted).  Although Mr. Jackson alleges that he was arrested at some point after the August 21 Meeting pursuant to some legal process (Compl., ¶ 141), the Complaint is devoid of any allegation that he was deprived of liberty pursuant to the grand jury's indictment.  Therefore, he has not alleged that Mr. Stavis' asserted falsifications caused him to be seized as that term is understood in the Fourth Amendment context.  It is not permissible merely to presume that, because he was indicted, there must have been a deprivation of liberty that rises to the level of a seizure.  Courts have made clear that not all restrictions on liberty will establish such a constitutional injury.  See, e.g., Burg v. Gosselin, 591 F.3d 95, 98-99 (2d Cir. 2010) (noting that merely being required to make a court appearance will not constitute a seizure); Elek, 2011 WL 4472027, at *7 (requiring allegation of

detainment, travel restriction, and/or multiple mandatory court appearances for Section 1983 malicious prosecution claim); Neimann v. Whalen, 911 F. Supp. 656, 670 (S.D.N.Y. 1996). Thus, the plaintiff's failure to allege a post-indictment seizure is fatal to his malicious prosecution claim under Section 1983. See, e.g., Luzzi v. Mack, No. 95 Civ. 9720, 1998 WL 150496, at * 7 (S.D.N.Y. March 31, 1998) (dismissing malicious prosecution claim when plaintiff did "not assert, in her complaint or elsewhere, anything that amounts to a post-arraignment deprivation of liberty").

    5.  Malicious Abuse of Process (Count VI)

    A defendant can be held liable for malicious abuse of process when he "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino, 331 F.3d at 76 (internal quotation marks omitted).

    "[T]he gist of abuse of process is the improper use of process after it is regularly issued." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).[13]   Moreover, the plaintiff must allege an improper

_____

    [13] The New York Court of Appeals has questioned in dicta whether this temporal element is a limitation on the cause of action. See Parkin v. Cornell University, Inc., 78 N.Y.2d 523, 530, 577 N.Y.S.2d 227, 230 (1991). However, as more than one court in this district has pointed out, Cook, which was decided subsequent to Parkin, states that the improper use must occur after, not during, the issuance of process, and lower courts are bound by that as the law of the Second Circuit. See Campos v. City of New York, No. 10 Civ. 493, 2010 WL 3912493, at *4 n.5 (Sept. 13, 2010); Richardson v. New York City Health and Hospitals Corp., No. 05 Civ. 6278, 2009 WL 804096, at *16 (S.D.N.Y. March 25, 2009); see

objective; an improper motive, such as personal animosity, is not sufficient.   See Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 468 (1984); see also Newton v. City of New York, 566 F. Supp. 2d 256, 280 (S.D.N.Y. 2008) ("Personal animosity is a collateral motive, not a collateral purpose.").   The plaintiff here meets neither of these requirements.

Mr. Jackson states:

> Instead of investigating the claims, witnesses, and allegations, the defendants issued legal process to arrest Mr. Jackson so that Stuart Ross would be unable to call upon Mr. Jackson for advice and assistance with his defense and[] so that Ross would be prevented from defending his charges by claiming that he relied on counsel's advice.   Additionally, the District Attorney defendants were appeasing, accommodating and assisting the civilian defendants in penalizing Mr. Jackson based upon the relationships and influence the civilian defendants had with the District Attorney defendants.

(Compl., ¶ 142).   In tandem with earlier allegations in the Complaint emphasizing the Private Defendants' alleged role in the investigation, it is clear that the process which has assertedly been abused is the process issued for Mr. Jackson's arrest. Moreover, there is a failure to allege any involvement after Mr. Jackson was arrested but prior to the presentation of the case to the grand jury that issued the indictment.   Mr. Jackson attempts to

---

also Elek, 2011 WL 4472027, at *7 (finding plaintiff "plainly failed to plead the elements" of abuse of process when there was no allegation of a collateral objective occurring after the process was issued); Jones v. Maples/Trump, No. 98 Civ. 7132, 2002 WL 287752, at *8 (S.D.N.Y. Feb. 26, 2002) (dismissing abuse of process claim because plaintiff did not "allege that the charges were improperly used 'after' they were brought, i.e., that the perverted operation of the process itself tended to effect the defendants' malicious objectives"), aff'd sub nom. Jones v. Trump, 71 Fed. Appx. 873 (2d Cir. 2003).

allege abuse in the <u>issuance</u> of the legal process by which he was arrested, and not in any later perversion of that process.  Because there is no allegation relating to any subsequent abuse of process by the Private Defendants, the claim must be dismissed against them.  <u>See</u> <u>Elek</u>, 2011 WL 4472027, at *7 (denying leave to amend abuse of process claim when there was no allegation of improper use after the issuance of process); <u>Campos</u>, 2010 WL 3912493, at *4 & n.6 (dismissing abuse of process claim when there was no allegation of improper use after the issuance of process); <u>Jones</u>, 2002 WL 287752, at *8 (same).

In addition, the plaintiff's allegations regarding the Private Defendants' improper objective are deficient.  In order to state a claim, "[t]here must be an abuse of process which has as its direct object an effect outside the intended scope of operation of the process employed."  <u>Id.</u> at *7 (emphasis omitted).  The New York Court of Appeals explains:

> If one resorts to legal process to have another declared incompetent, and uses it for that purpose, he does not commit the wrong . . . no matter what his motives, hopes, or expectations may be.  But if he makes use of that process not for the purpose of attaining its proper end, but to extort money, or to coerce action, that is a perversion of the process.

<u>Hauser v. Bartow</u>, 273 N.Y. 370, 374, 7 N.E.2d 268, 269-70 (1937). So, for example, in <u>Dean v. Kochendorfer</u>, 237 N.Y. 384, 390, 143 N.E. 229, 229 (1924), a claim of abuse of process was made out when a magistrate used legal process to arrest a lawyer for disorderly conduct, and then brought him into court to chide him for failing to obey the magistrate's own rule against waiting in the hallways

41

of the town hall.  See also Jones, 2002 WL 287752, at *7 (citing Dean for the proposition that there is abuse of process where an arrest warrant is issued on one charge, but the process is perverted when the "arrested person is brought into court for an unrelated disciplinary rebuke").  On the other hand, there is no claim for abuse of process when the alleged wrongful objectives of a suit for defamation were to punish the plaintiffs' exercise of free speech and electoral participation and subject them to the expense and burden of litigation.  Curiano, 63 N.Y.2d at 115-17, 480 N.Y.S.2d at 467-68.

The plaintiff has alleged that the unlawful objective here was to prevent Mr. Jackson from assisting Mr. Ross, and to prevent Mr. Ross from asserting an advice-of-counsel defense.  These consequences were strategic choices on the part of Mr. Ross' counsel which apparently directly resulted from Mr. Jackson's arrest: the notion is that Mr. Ross would not want to be assisted by or to use as a defense the advice of an attorney who had been arrested for alleged participation in the same scheme for which Mr. Ross was being prosecuted.  Because Mr. Jackson's arrest was within the intended scope of the process, these objectives were attendant to the arrest, not collateral to it.

   C.   Leave to Amend

The plaintiff asks for leave to amend.  The requests are found in two identical footnotes -- one in each set of opposition papers -- consisting of one sentence with one case citation.  (Opp. to Blitzer Mot. at 8 n.2; Opp. to Stavis Mot. at 8 n.2).  The

Private Defendants do not address this request.  Because the plaintiff has failed to present any argument in support of his request, denial of leave to amend would not be an abuse of discretion.  See Porat v. Lincoln Towers Community Assoc., 464 F.3d 274, 275-76 (2d Cir. 2006) (affirming district court's denial of leave to amend when request was mentioned only in footnote and conclusion of opposition to motion to dismiss).

To be sure, the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  Id. at 276.  Nonetheless, "[a] district court has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)).  If the complaint cannot be amended to survive a motion to dismiss without contradicting the allegations in the original complaint, leave to amend is properly denied.  See, e.g., Kant v. Columbia University, No. 08 Civ. 7476, 2010 WL 807442, at *7-8 (S.D.N.Y. March 9, 2010).

In this case, Mr. Jackson cannot plead the Section 1983 predicates -- an agreement among the Private Defendants and the District Attorney Defendants to deprive him of his civil rights which caused a constitutional injury -- without contradicting the allegations in the Complaint.  The Complaint alleges an agreement to entrap Mr. Jackson.  Such an agreement cannot coexist with an agreement to arrest and prosecute Mr. Jackson without probable cause because, as noted above, the entrapment would have provided

43

probable cause for the arrest and prosecution.  Moreover, given the defendants' attempts to establish probable cause, such as by recording Mr. Stavis' phone conversations and the August 21 Meeting, an agreement to arrest and prosecute without probable cause would have been irrational.  I therefore recommend that leave to amend Mr. Jackson's federal claims against the Private Defendants be denied.

However, at this juncture, I cannot determine that it would be impossible for Mr. Jackson to amend his state law malicious prosecution claim against the Private Defendants without contradicting the allegations in the original Complaint.  I therefore recommend granting leave to amend this claim, provided that the plaintiff can do so consistent with his obligations under Rule 11 of Federal Rules of Civil Procedure.[14]

Conclusion

For the reasons above, I recommend that the Blitzer's Motion to Dismiss (Docket No. 20) be granted and that Mr. Stavis' Motion

---

[14] Although I recommend dismissal of all the federal claims against the Private Defendants without leave to amend, the Private Defendants are still proper parties to this litigation because the state law malicious prosecution claim (for which I recommend leave to amend) arises from the same set of operative facts as the federal claims against the District Attorney Defendants.  See 28 U.S.C. § 1367(a); Palumbo v. Manhattan and Bronx Surface Transit Operating Authority, 346 F. Supp. 2d 493, 494 (S.D.N.Y. 2004) ("[A] federal court may entertain state law claims against a defendant if the plaintiff properly brings a federal claim against another defendant when both claims arise from the same set of facts -- commonly referred to as pendent party jurisdiction."); see also Calderon v. Burton, 457 F. Supp. 2d 480, 488 (S.D.N.Y 2006) (dismissing all federal claims against certain defendants but retaining jurisdiction over state law claims against them because federal claims arising from the same set of facts remained against another defendant).

to Dismiss (Docket No. 16) be granted.  I further recommend that Mr. Jackson be denied leave to amend his Section 1983 claims against the Private Defendants, but granted leave to amend his state law malicious prosecution claim against the Private Defendants.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 14, 2012

Copies mailed this date to:

Bruce Barket, Esq.
Amy B. Marion, Esq.
Quadrino & Schwartz, PC
666 Old Country Road, 9th Floor
Garden City, New York  11530

Cynthia M. Sittnick, Esq.
Assistant District Attorney
One Hogan Place
New York, New York  10013

Kevin Schlosser, Esq.
Meyer, Suozzi, English & Klein, PC
990 Stewart Avenue
P.O. Box 9194
Garden City, New York   11530

David S. Douglas, Esq.
Gallet Dreyer & Berkey, LLP
845 Third Avenue
New York, New York   10022