UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
STUART JACKSON,                           :   11 Civ. 5826 (LAK) (JCF)
                                          :
            Plaintiff,                     :       REPORT AND
                                          :   <u>RECOMMENDATION</u>
    - against -                            :
                                          :
NEW YORK COUNTY ASSISTANT DISTRICT :
ATTORNEY SEEWALD, NEW YORK COUNTY  :
ASSISTANT DISTRICT ATTORNEY        :
SCHULMAN, NEW YORK COUNTY ASSISTANT:
DISTRICT ATTORNEY KITSIS, NEW YORK :
COUNTY DISTRICT ATTORNEY SENIOR    :
INVESTIGATOR MICHAEL WIGDOR, NEW   :
YORK COUNTY DISTRICT ATTORNEY      :
SUPERVISING INVESTIGATOR WALTER    :
ALEXANDER, CHIEF OF THE            :
INVESTIGATION BUREAU OF THE NEW    :
YORK COUNTY DISTRICT ATTORNEY'S    :
OFFICE JOSEPH PENNISI, ASSISTANT   :
CHIEF OF THE BUREAU OF THE NEW     :
YORK COUNTY DISTRICT ATTORNEY'S    :
OFFICE TERRENCE, JOHN/JANE DOE     :
EMPLOYEES OF THE NEW YORK COUNTY   :
DISTRICT ATTORNEY'S OFFICE, ROGER  :
STAVIS, DAVID BLITZER, ALLISON     :
BLITZER,                           :
                                          :
            Defendants.                    :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.

        The plaintiff, Stuart Jackson, brought this action under 42
U.S.C. § 1983 and New York state law against employees and former
employees of the New York County District Attorney's Office
(collectively, the "DA defendants") and three private citizens,
alleging violations of his constitutional rights in connection with
his arrest and criminal prosecution.  On May 3, 2012, the Honorable
Lewis A. Kaplan, U.S.D.J., dismissed Mr. Jackson's claims against
the private individuals, David Blitzer, Allison Blitzer, and Roger

Stavis. The DA defendants[1] now move to dismiss the complaint for failure to prosecute under Rules 41(b) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6). For the reasons set forth below, I recommend that the motion be granted in part and denied in part.

<u>Background</u>

The facts of the case were set forth in my March 14, 2012 Report and Recommendation (the "March 14 R&R") and will be summarized and supplemented here. In accordance with the standard for assessing a motion to dismiss, the allegations in the complaint are taken as true. <u>See</u> <u>Ashcroft v. al-Kidd</u>, __ U.S. __, __, 131 S. Ct. 2074, 2079 (2011).

Mr. Jackson is an attorney who has at various times represented Stuart Ross. (Complaint ("Compl."), ¶ 22). Mr. Ross had been estranged from his daughter, Allison Blitzer, since 2002, but continued to communicate with his son-in-law, David Blitzer. (Compl., ¶ 24). Over the years, Mr. Blitzer had given Mr. Ross money for business ventures and other purposes. (Compl., ¶¶ 24-26). In December 2007, Mr. Ross asked Mr. Blitzer for additional funds and indicated that he would like to reconnect with Ms. Blitzer and their children -- his grandchildren. (Compl., ¶ 27). After some back and forth, Mr. Blitzer eventually decided to stop giving Mr. Ross money. (Compl., ¶¶ 27-29).

---

[1] Counsel for the DA defendants has been unable to contact defendant Assistant Chief Investigator Terrance Mulderick. They contend, however, that all arguments made on behalf of the DA defendants apply equally to defendant Mulderick. (Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") at 1 n.1).

In June 2008, the plaintiff met with Mr. Blitzer in London at Mr. Ross' request. (Compl., ¶ 30). At the meeting, Mr. Jackson conveyed Mr. Ross' message that he was willing to enter into a consent decree and agree not to petition a court to seek visitation with his grandchildren. (Compl., ¶¶ 31, 34).

When Mr. Jackson returned to New York, he spoke with Mr. Blitzer on the phone and suggested that Mr. Blitzer have his lawyer call to discuss a proposed consent decree. (Compl., ¶ 35). On July 30, 2008, Mr. Blitzer's attorney, Roger Stavis, contacted the plaintiff to ask what Mr. Ross wanted in exchange for giving up his visitation rights and to have Mr. Ross stop "harassing" the Blitzers. (Compl., ¶¶ 36, 61). The plaintiff replied that he was unaware of any harassment by his client. (Compl., ¶¶ 36, 61). He called Mr. Ross, who denied any harassment and stated that in exchange for giving up his visitation rights, he wanted $ 5.5 million and would also promise not to call Mr. Blitzer at work or anyone else at the Blackstone Group ("Blackstone"), where Mr. Blitzer was employed. (Compl., ¶¶ 37, 61). Mr. Jackson conveyed Mr. Ross' demand to Mr. Stavis telephonically (Compl., ¶ 62; Trial Testimony of Roger Stavis ("Stavis Trial Test."), attached as Exh. 3 to Compl., at 474-75, 478), and Mr. Stavis memorialized it in a letter (Compl., ¶¶ 37, 63; Stavis Trial Test. at 479). When Mr. Ross saw the letter, he informed the plaintiff that he wanted $5.5 million to waive his visitation rights and another $5.5 million to stop calling Mr. Blitzer or anyone else at Blackstone. (Compl., ¶ 37). Mr. Jackson related this to Mr. Stavis. (Compl., ¶¶ 37, 64).

The next day, Mr. Stavis received a package from Mr. Blitzer that contained printouts of e-mails between Mr. Ross and Mr. Blitzer and tapes of voice-mails left by Mr. Ross. (Compl., ¶ 40; Stavis Trial Test. at 493). According to Mr. Stavis' testimony, after reading the e-mails and listening to the tapes, he concluded that there was a threat to the safety of the Blitzer family (Stavis Trial Test. at 494-95), so he contacted New York County Assistant District Attorney Michelle Schulman and played her some of Mr. Ross' voice-mails (Compl., ¶ 40; Stavis Trial Test. at 497-98).

On August 12, 2008, Mr. Stavis accompanied Mr. and Ms. Blitzer to a meeting at the New York County District Attorney's Office ("DANY"). (Compl., ¶41). Also present at the meeting were ADA Schulman, Assistant District Attorney Andrew Seewald, DANY Senior Investigator Michael Wigdor, and another individual from DANY. (Compl., ¶ 41; Stavis Trial Test. 499; Grand Jury Testimony of Roger Stavis ("Stavis G.J. Test."), attached as Exh. 2 to Compl., at 394). During the meeting, "a course of action [] was planned." (Compl., ¶ 42; Stavis G.J. Test. at 393). The plan was for Mr. Stavis to record his telephone conversations with Mr. Jackson (Stavis Trial Test. at 515), and to arrange a meeting with Mr. Ross and Mr. Jackson (Compl., ¶ 42). According to Mr. Stavis, the purpose of the meeting was to make clear to Mr. Ross that his actions were criminal and give him an opportunity to cease and, failing that, to obtain evidence to be used against him. (Compl., ¶ 42; Stavis G.J. Test. at 394-95). According to Mr. Jackson, the purpose of the meeting was to set him up. (Compl., ¶ 44). Mr.

4

Jackson claims that Mr. Blitzer harbored ill-will toward him because of a transaction that occurred in 2000, in which he held money of Mr. Blitzer's in escrow and, pursuant to the escrow agreement, returned the money to Mr. Ross rather than to Mr. Blitzer. (Compl., ¶ 47).

Mr. Stavis, with the assistance of Investigator Wigdor, recorded his telephonic conversations with Mr. Jackson. (Compl., ¶ 48; Stavis Trial Test. at 514). A meeting among Mr. Blitzer, Mr. Stavis, Mr. Ross, and the plaintiff was arranged for August 21, 2008. (Compl., ¶ 49). Before that meeting, Investigator Wigdor and others from DANY went to Mr. Stavis' office and gave Mr. Blitzer and Mr. Stavis recording devices. (Compl., ¶ 49; Stavis Trial Test. at 525). In addition, the DA defendants instructed Mr. Blitzer and Mr. Stavis on how to conduct themselves during the meeting. (Compl., ¶ 50). According to Mr. Stavis, ADA Seewald said that "this was an opportunity [] to see if there was going to be a criminal case to be made or not." (Stavis Trial Test. at 526).

At some point after the August 21 meeting, Investigator Wigdor asked the plaintiff to come to the DANY office, and when Mr. Jackson voluntarily presented himself, ADA Seewald informed him that he was being arrested. (Compl., ¶ 56).

Thereafter, ADA Seewald presented the case to the grand jury, calling Mr. Stavis as his key witness. (Compl., ¶ 60). According to the plaintiff, the prosecution's theory was that he, acting in concert with Mr. Ross, caused Mr. Blitzer to believe that if he did

not pay money to Mr. Ross, Mr. Jackson or someone else would harm Mr. Blitzer's business and personal relationships. (Compl., ¶ 58). Mr. Jackson claims that Mr. Stavis, with the assistance of ADA Seewald and under the supervision of Assistant District Attorney Michael Kitsis, provided false testimony to the grand jury which the DA defendants did not correct.  (Compl., ¶¶ 61-66).   In addition, he alleges that ADA Seewald provided "poisoned and tainted" interpretation of the plaintiff's exculpatory statements and failed to present exculpatory evidence to the grand jury. (Compl., ¶¶ 69-72).

The plaintiff was indicted for attempted grand larceny in the second degree and grand larceny in the third degree.  (Compl., ¶ 57).  He was acquitted of all charges at trial.  (Compl., ¶ 111)

On August 19, 2011, Mr. Jackson filed the instant complaint. He asserts claims of constitutional violations in the nature of (1) false arrest, (2) denial of due process in connection with the investigation and presentation of his criminal case, (3) malicious prosecution, (4) conspiracy to deny his constitutional rights, (5) failure to intercede, and (6) abuse of process.  In addition, he alleges a state law malicious prosecution claim.

<u>Discussion</u>

The DA defendants have moved to dismiss the complaint on the grounds that (1) the plaintiff has failed to prosecute the case diligently; (2) he has failed to allege facts sufficient to support a claim; (3) the DA defendants are protected by absolute prosecutorial immunity; and (4) they are protected by qualified

immunity.  (Def. Memo. at I).

A.   <u>Failure to Prosecute</u>

Rule 41(b) of the Federal Rules of Civil Procedure provides in pertinent part that "[i]f the plaintiff fails to prosecute . . . a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); <u>see also</u> <u>Link v. Wabash Railroad Co.</u>, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot be seriously doubted." (footnote omitted)). Because dismissal is a harsh remedy, it is only appropriate in extreme circumstances.  <u>Spencer v. Doe</u>, 139 F.3d 107, 112 (2d Cir. 1998); <u>Peart v. City of New York</u>, 992 F.2d 458, 461 (2d Cir. 1993).

In determining whether dismissal is appropriate, courts consider whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration;(2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against [the] plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

<u>Yadav v. Brookhaven National Laboratory</u>, No. 11-3054, 2012 WL 5416606, at *1 (2d Cir. Nov. 7, 2012) (citing <u>Lewis v. Rawson</u>, 564 F.3d 569, 576 (2d Cir. 2009)).  No one factor is dispositive.  <u>Id.</u>

The DA defendants contend that the plaintiff's failure to execute a waiver pursuant to section 160.50 of the New York

Criminal Procedure Law ("CPL")[2] for eight months warrants dismissal. (Def. Memo. at 4). The plaintiff argues that he was waiting for the DA defendants to provide him with the necessary authorization forms. (Memorandum of Law in Support of Plaintiff's Opposition to District Attorney's Motion to Dismiss ("Pl. Memo.") at 2). Notably, the DA defendants do not claim that the plaintiff failed to comply with a court order or any rule, nor could they. This weighs against dismissal. See Platinum Funding Corp. v. Bosselli Studio Ltd., 335 F. App'x 120, 122 (2d Cir. 2009) (remanding case dismissed for failure to prosecute because no record that plaintiff violated or disobeyed court order). Moreover, this case has not been dormant. Since I granted the DA defendants an extension to answer the complaint until after the plaintiff executed a CPL § 160.50 waiver, Mr. Jackson has timely responded to the private citizen defendants' motions to dismiss and has filed objections to my March 14 Report and Recommendation. Mr. Jackson also timely responded to the instant motion to dismiss. Therefore, the plaintiff has not failed to prosecute his case or otherwise caused delay.

   As to the second factor, Mr. Jackson has not received any notice that he was in jeopardy of having his case terminated for not executing the waiver. This factor strongly counsels against dismissal. See, e.g., Coats v. Department of Veteran Affairs, 268

---

   [2] Since Mr. Jackson was acquitted at trial, documents related to his criminal prosecution were sealed in accordance with CPL § 160.50.

F. App'x 125, 127 (2d Cir. 2008) (holding dismissal was abuse of discretion because, among other things, no evidence plaintiff was warned dismissal was being contemplated); <u>Nita v. Connecticut Department of Environmental Protection</u>, 16 F.3d 482, 487 (2d Cir. 1994) (same).

The DA defendants contend that in the absence of any excuse for the delay, prejudice may be assumed and that, in fact, they have been prejudiced because defendant ADA Schulman has since left the office and moved to Africa. (Def. Memo. at 5). However, since the delay, if any, in this case is not a result of Mr. Jackson's disregard of a specific court order, "the delay is less inexcusable." <u>See</u> <u>United States ex rel. Pervez v. Maimonides Medical Center</u>, No. 06 Civ. 4989, 2010 WL 890236, at *4 (S.D.N.Y. March 9, 2010). Moreover, the plaintiff contends that the DA defendants never contacted him directly with a request for the waiver. (Pl. Memo. at 5). The first time plaintiff's counsel and defense counsel spoke since the DA defendants were granted an extension, defense counsel raised the waiver issue and the plaintiff executed the waiver in less than two weeks. (Memorandum Endorsement dated July 17, 2012, at 1).

A balancing between the Court's interest in efficient adjudication and the plaintiff's interest in having his day in court favors permitting the case to proceed. As noted above, the case has advanced on other fronts notwithstanding the waiver issue.

Finally, since Mr. Jackson promptly responded and executed the waiver when defense counsel raised this issue, there is no reason

9

to believe that dismissal is the only effective sanction available. See United States ex rel. Pervez, 2010 WL 890236, at *5 (noting since plaintiff promptly responded to court's only order issued in response to delay, no reason to suspect plaintiff would not be responsive to lesser sanctions or court order).

Having considered each of the relevant factors, I recommend that the complaint not be dismissed because of a failure to prosecute.

B.   Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). A complaint need not make "'detailed factual allegations,'" but it must contain more than mere "'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard. Id. at 678. In ruling on a motion to dismiss, the court's role "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be

offered in support thereof.'" GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. See Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC, 298 F. 3d 136, 140 (2d Cir. 2002). A court may also consider matters of public record, including arrest reports, indictments, and criminal disposition data, Vasquez v. City of New York, No. 99 Civ. 4606, 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000), as well as transcripts of court proceedings and judicial opinions, Hayes v. Perotta, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010).

### 1.   Absolute Immunity

As a threshold matter, the DA defendants argue that New York County Assistant District Attorneys Kitsis, Schulman, and Seewald (collectively, the "ADA defendants") are entitled to absolute immunity from liability for actions undertaken in their roles as "advocates." (Def. Memo. at 7). The plaintiff claims that ADA defendants were not acting as advocates or officers of the court, but were instead engaging in investigative or administrative tasks. (Pl. Memo. at 6-7).

Prosecutors are entitled to absolute immunity for "advocatory

11

conduct that is 'intimately associated with the judicial phase of the criminal process.'  This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'"  Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (quoting Imbler v. Pacthman, 424 U.S. 409, 430 & 431 n.33 (1976)).  However, when a prosecutor acts outside his role as an advocate or beyond the scope of his authority, absolute immunity does not apply.  See Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); Buckley v. Fitsimmons, 509 U.S. 259, 273 (1993); Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990).  For example, where a prosecutor acts in an investigatory or administrative capacity, absolute immunity is not available.  See Mitchell v. Forsyth, 472 U.S. 511, 513, 520 (1985) (holding Attorney General not absolutely immune for authorizing warrantless wiretap); Buckley, 509 U.S. at 262-63, 276 (denying prosecutors absolute immunity for fabricating evidence "during the early stages of the investigation").

In determining whether a prosecutor enjoys absolute immunity, courts "employ a 'functional' approach, looking at 'the nature of the function performed, not the identity of the actor who performed it.'"  Mangiafico v. Blumenthal, 471 F.3d 391, 394 (2d Cir. 2006) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  The relevant question is "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor."  Giraldo, 694 F.3d at 166.  Moreover, as long as the nature of the action is prosecutorial, "absolute

12

immunity applies to protect the prosecutor even in the face of a complaint's allegation of malicious or corrupt intent behind the acts." Id.; see also Buckley, 509 U.S. at 271-72 (noting that "harm that the conduct may have caused or the question whether it was lawful" is irrelevant to whether absolute immunity applies); Pinaud v. County of Suffolk, 52 F.3d 1139, 1150 (2d Cir. 1995) ("[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity in question, and not upon how wrongly the particular actors may have performed that activity in a specific instance.").

"The line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." Zahrey v. Coffey, 221 F.3d 342, 347 (2d Cir. 2000). In Zahrey, the Second Circuit noted that "a prosecutor's conduct prior to the establishment of probable cause should be considered investigative: 'A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.'" Id. at 347 n.2 (quoting Buckley, 509 U.S. at 274); see also Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."). "[T]he mere fact that a prosecutor might later convene a grand jury and obtain an indictment does not automatically serve to cloak his prior investigatory actions with the protection of absolute immunity." Anilao v. Spota, 774 F. Supp. 2d 457, 477 (E.D.N.Y. 2011). "The burden is on the party asserting absolute immunity."

13

Bertuglia v. City of New York, 839 F. Supp. 2d 703, 731 (S.D.N.Y. 2012).

Applying the functional test to the allegations in the complaint, the ADA defendants are entitled to absolute immunity for allegations related to their decision to initiate prosecution of Mr. Jackson as well as their presentation of evidence before the grand jury and at trial. See Kent v. Cardone, 404 F. App'x 540, 542-43 (2d Cir. 2011) (holding prosecutor entitled to absolute immunity for "'initiating a prosecution,' as well as for his performance of tasks as an advocate in the conduct of the prosecution." (internal citations omitted)). This is true notwithstanding Mr. Jackson's allegations that there was no probable cause to initiate prosecution against him, see Buckley, 509 U.S. at 274 n.5 (acknowledging that absolute immunity shields "a prosecutor's decision to bring an indictment, whether he has probable cause or not"), or that the ADA defendants presented false evidence and withheld exculpatory evidence from the grand jury, see Hill, 45 F.3d at 661 (prosecutor's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity"); Kent, 404 F. App'x at 544 (noting prosecutors are entitled to immunity for their conduct in front of grand jury even if it is "wildly inappropriate and may furnish grounds for a finding of prosecutorial misconduct"), or at trial, see Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutor entitled to absolute immunity even if he is alleged to have conspired to

14

present false evidence at trial).  See also Anilao 774 F. Supp. 2d at 479 (collecting cases).  Therefore, to the extent that the plaintiff's claims are based upon the ADA defendants' initiation of the prosecution against him or their conduct in front of the grand jury or at trial, the ADA defendants are absolutely immune from liability on these claims.

Absolute immunity also shields the investigator defendants, see Hill, 45 F.3d at 660 (absolute immunity applies to "employees who assist [the prosecutor] and act under [the prosecutor]'s direction in performing functions closely tied to the judicial process"), as well as DA defendants who acted in a supervisory role, see Anilao, 774 F. Supp. 2d at 481 n.17 (noting "absolute immunity protection shields the action of both [a] defendant [] who presented the case to the Grand Jury, and [a] defendant [] who acted as [the] supervisor regarding the initiation of the prosecution and the presentation to the Grand Jury.").

Accordingly, I recommend dismissing the malicious prosecution claims in their entirety.  See Rehberg v. Paulk, __ U.S. __, __, 132 S. Ct. 1497, 1504 (2012) (prosecutors are absolutely immune from claims for malicious prosecution); Hill, 45 F.3d at 661 ("With respect to . . . malicious prosecution, it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution.").  This includes the malicious prosecution claims brought under both federal and state law.  Moye v. City of New York, No. 11 Civ. 316, 2012 WL 2569085, at *7 & n.5 (S.D.N.Y. July 3, 2012) (dismissing both federal and state law

claims alleging malicious prosecution, noting "[a]bsolute immunity is a defense not only to Section 1983 claims but related state law claims").

On the other hand, the DA defendants' alleged conduct before and during the August 21 meeting was not advocacy. The DA defendants argue that "ADA Schulman's review of evidence forwarded to her by [Mr. Stavis] . . . is precisely the type of conducted [sic] expected of a prosecutor." (Def. Memo. at 9). They analogize her action to "the professional evaluation of the evidence assembled by the police" for which she would be entitled to absolute immunity. (Def. Memo. at 9). However, according to the complaint, the DA defendants did more than simply evaluate already assembled evidence. They met with the private citizen defendants and planned a "course of action" to obtain incriminating evidence and "set up Mr. Jackson." (Compl., ¶¶ 41-42, 44). They recorded Mr. Stavis' telephone conversation with Mr. Jackson, conducted investigations at Mr. Jackson's office (Compl., ¶ 48), gave advice to Mr. Stavis and Mr. Blitzer on how to conduct themselves during the August 21 meeting, and recorded the meeting. (Compl., ¶¶ 49-50). These are investigative acts that would normally be performed by the police and for which the DA defendants are not entitled to prosecutorial immunity. Buckley, 509 U.S. at 273 ("When a prosecutor performs the investigative function normally performed by a detective or police office, it is neither appropriate nor justifiable that, for the same act, immunity should protect the [prosecutor] and not the other." (internal quotation

16

marks omitted)); <u>Green v. County of Monroe</u>, 423 F. App'x 98, 99-100 (2d Cir. 2011) (prosecutorial immunity does not apply where plaintiff claim prosecutors conducted own investigation); <u>Peters v. City of Buffalo</u>, 848 F. Supp. 2d 378, 386 (W.D.N.Y. 2012) (prosecutorial immunity does not apply when prosecutors are alleged to have "actually dictated what evidence was collected"). Since neither the DA defendants nor the plaintiff claims that the police were involved in this investigation, it is reasonable to infer that not only were the DA defendants involved in the investigation, they were also "spearheading" it. <u>Anilao</u>, 774 F. Supp. 2d at 482.

Furthermore, these acts are alleged to have occurred before a decision was made to prosecute the plaintiff and before there was probable cause to arrest him. According to Mr. Stavis, ADA Seewald described the August 21 meeting as "an opportunity [] to see if there was going to be a criminal case to be made or not." (Stavis Trial Test. at 526). The DA defendants' conduct through the August 21 meeting involved "the detective's role in searching for the clues and corroboration that might give [them] probable cause to recommend that a suspect be arrested." <u>Buckley</u>, 509 U.S. at 273. As the Supreme Court explained, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." <u>Id.</u> at 274 (footnote omitted). Moreover, "[a] prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial."

17

Id. at 276; see also Zahrey, 221 F.3d at 353 ("[A] subsequent immunized act of a single official does not break the chain of causation traceable to his initial misconduct occurring in another capacity.").

Likewise, the DA defendants are not shielded by prosecutorial immunity for their conduct in arresting Mr. Jackson.  Since arrests "'are normally police functions, [] they do not become prosecutorial functions merely because a prosecutor has chosen to participate.'" Day v. Morgenthau, 909 F.2d 75, 77-78 (2d Cir. 1990) (quoting Robison v. Via, 821 F.2d 913, 918 (2d Cir. 1987)).

In sum, I recommend that the DA defendants' motion be granted to the extent that they are entitled to absolute immunity for their conduct in initiating the prosecution of the plaintiff, at the grand jury presentment, and at trial.  On the other hand, I recommend denying the motion insofar as it relates to alleged misconduct leading up to and including Mr. Jackson's arrest.

## 2.   Qualified Immunity/Merits

The DA defendants argue, in the alternative, that even if they were acting in an investigatory capacity, they are entitled to qualified immunity.  (Def. Memo. at 11-13). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, __ U.S. __, __, 132 S. Ct. 2088, 2093 (2012). As a threshold matter, courts often determine first whether the

facts, when viewed in the light most favorable to the party professing an injury, "show the officer's conduct violated a constitutional right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). If so, the court then examines whether "the right was clearly established." <u>Id.</u>  On the other hand, "[i]f no constitutional rights would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Id.</u>; <u>cf.</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009) (holding that court may reverse order of analysis).

"[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004); <u>see</u> <u>McCray v. City of New York</u>, Nos. 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 WL 4352748, at * 18 (S.D.N.Y. Dec. 11, 2007) ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle." (internal quotation marks omitted)).  The facts supporting the qualified immunity defense must not only be clear from the face of the complaint but it must "appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>McKenna</u>, 386 F.3d at 436 (internal quotation marks omitted).

a.   <u>False Arrest</u>

The Fourth Amendment protects the right to remain free from unreasonable searches and seizures, including the right not to be

19

arrested absent probable cause.  <u>Jaeqly v. Couch</u>, 439 F.3d 149, 151
(2d Cir. 2006).  "In analyzing § 1983 claims for unconstitutional
false arrest, we have generally looked to the law of the state in
which the arrest occurred."  <u>Id.</u> (internal quotation marks
omitted).  Here, the arrest occurred in New York, and under New
York law, the elements of false arrest are that: "'(1) the
defendant intended to confine [the plaintiff], (2) the plaintiff
was conscious of the confinement, (3) the plaintiff did not consent
to the confinement[,] and (4) the confinement was not otherwise
privileged.'"  <u>Ackerson v. City of White Plains</u>, __ F.3d __, __,
2012 WL 5951836, at *3 (2d Cir. 2012) (quoting <u>Broughton v. State
of New York</u>, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)).  A
confinement is privileged if it is "pursuant to a warrant or with
probable cause or immunity protection."  <u>Curley v. AMR Corp.</u>, 153
F.3d 5, 13 (2d Cir. 1998).

    The existence of probable cause "is a complete defense to an
action for false arrest, whether that action is brought under state
law or under § 1983."  <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir.
1996) (internal quotation marks and citation omitted); <u>see also</u>
<u>Ackerson</u>, 2012 WL 5951836, at *3.  Probable cause exists if there
is "a reasonable belief that a person has committed a crime."
<u>Williams v. City of New York</u>, No. 10 Civ. 9594, 2012 WL 547508, at
*6 (S.D.N.Y. Feb. 17, 2012) (citing <u>Mejia v. City of New York</u>, 119
F. Supp. 2d 232, 253 (E.D.N.Y. 2000)).  The defendants bear the
burden of proving probable cause existed for the arrest.  <u>Savino v.
City of New York</u>, 331 F.3d 63, 76 (2d Cir. 2003).  Even when there

20

is no probable cause for an arrest, "[a]n officer who makes an arrest . . . is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed." <u>Espinoza v. City of New York</u>, No. 11 Civ. 2108, 2012 WL 4761565, at *4 (S.D.N.Y. Aug. 3, 2012).

According to the plaintiff, ADA Seewald arrested him (Compl., ¶ 56), "without any legal basis or reasonable or probable cause" (Compl., ¶ 83), and "before any formal proceeding had begun" (Compl., ¶ 84). However, the plaintiff also asserts that the DA defendants "issued legal process" to place him under arrest. (Compl., ¶ 141). Under New York law "'where the illegal imprisonment is pursuant to legal process which is valid on its face, the State cannot be held liable in damages for wrongful detention'" unless the court issuing the process lacked jurisdiction. <u>Collins v. State</u>, 69 A.D.3d 46, 51, 887 N.Y.S.2d 400, 404 (4th Dep't 2009) (quoting <u>Harty v. State of New York</u>, 29 A.D.2d 243, 244, 287 N.Y.S.2d. 306, 307 (3d Dep't 1968)).

The complaint contains no information as to what legal process was used to effect Mr. Jackson's arrest. In my March 14 Report and Recommendation, I note that the plaintiff has not overcome the presumption of probable cause because he contends that he was arrested pursuant to legal process. (March 14 R & R at 30 & n.11). "It is well-established that where an individual's arrest is effectuated pursuant to a warrant there can be no claim for false arrest." <u>Williams v. Young</u>, 769 F. Supp. 2d 594, 602 (S.D.N.Y.

2011).  However, the DA defendants do not claim that Mr. Jackson was arrested pursuant to a warrant.  Rather, they contend probable cause existed for his arrest because the grand jury later indicted him based on the same evidence they had when they arrested him. (Def. Memo. at 12-13).  Under New York law, "the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions." Savino, 331 F.3d at 75 (alteration in original) (quoting Broughton, 37 N.Y.2d at 456, 373 N.Y.S.2d at 93).  Furthermore, under New York law, "[a]fter the fact judicial participation cannot validate unlawful arrest; only probable cause existing at the time of arrest will validate the arrest." Blasini v. City of New York, No. 11 Civ. 3022, 2011 WL 6224605, at *4 (S.D.N.Y. Dec. 14, 2011) (alteration in original) (quoting Broughton, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95); see, e.g., Williams v. City of New York, 40 A.D.3d 847, 850, 835 N.Y.S.2d 717, 720 (2d Dep't 2007) (holding post-arrest indictment did not create presumption of probable cause for false arrest claim).

    "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers or may require a trial if the facts are in dispute." Weyant, 101 F. 3d at 852 (internal citations omitted).  Here, there are disputes both as to the events leading up to the plaintiff's arrest and as to the knowledge ADA Seewald had when he executed the arrest.

Accordingly, there is insufficient information at this stage to determine whether the DA defendants are entitled to qualified immunity. "'There is no question that the right[] . . . to be free from false arrest [was] 'clearly established at the time of the incident.'" <u>Curry v. City of Syracuse</u>, 316 F.3d 324, 336 n.9 (2d Cir. 2003) (alteration in original) (quoting <u>Lennon v. Miller</u>, 66 F.3d 416, 423 (2d Cir. 1995)). According to the complaint, the plaintiff was completely unaware of Mr. Ross' conduct toward the Blitzer family (Compl., ¶¶ 46, 54), and, during the August 21 meeting, he was merely helping Mr. Ross reach a lawful agreement and was in no way assisting him in extorting money from Mr. Blitzer (Compl., ¶ 52). "While the facts that may be established through discovery might lead to the conclusion that the individual defendants possessed actual or arguable probable cause to arrest [p]laintiff and commence his prosecution on certain crimes," at this stage those facts are not yet known. <u>Bernstein v. City of New York</u>, No. 06 Civ. 895, 2007 WL 1573910, at *5 (S.D.N.Y. May 24, 2007) (internal quotation marks and alteration omitted); <u>see</u> <u>Williams v. City of Mount Vernon</u>, 428 F. Supp. 2d 146, 156 (S.D.N.Y. 2006). Accordingly, the false arrest claim should not be dismissed.

           b.    Due Process Claim for Failure to Investigate, Fabrication of Evidence, and Withholding of <u>Exculpatory Evidence</u>

"[T]here is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government

officer acting in an investigatory capacity, at least where the
officer foresees that he himself will use the evidence with a
resulting deprivation of liberty." <u>Zahrey</u>, 221 F.3d at 344.  That
is, "'the investigatory act of obtaining evidence known to be false
is not itself a violation of a constitutional right,' but [] a
plaintiff may state a claim against a prosecutor 'where a
deprivation of liberty <u>results</u> from the initial act of obtaining
evidence known to be false, at least . . . where the same person
who fabricated the evidence forseeably used it.'" <u>Watson v. Grady</u>,
No. 09 Civ. 3055, 2010 WL 3835047, at *17 (S.D.N.Y. Sept. 30, 2010)
(second alteration in original) (quoting <u>Zahrey</u>, 221 F.3d at 354 ).
A fabrication of evidence claim cannot be defeated by demonstration
of probable cause.  <u>Deskovic v. City of Peekskill</u>, __ F. Supp. 2d
__, __, 2012 WL 4435316, at *5 (S.D.N.Y. 2012).

    The DA defendants argue that the plaintiff fails to allege
specific conduct taken by them that would constitute fabrication of
false or misleading evidence or suppression of potentially
exculpatory evidence.  (Def. Memo. at 7).  According to the
complaint, no incriminating evidence was uncovered during the DA
defendants' investigation of Mr. Jackson. (Compl., ¶¶ 52-53, 55).
Rather the alleged fabrication of false or misleading evidence
occurred during ADA Seewald's examination of Mr. Stavis at the
grand jury presentment (Compl., ¶¶ 61-62, 64-66, 68-70) and through
ADA Seewald's own statements in the grand jury (Compl., ¶¶ 69-70).
These are acts for which the DA defendants are entitled to absolute
immunity.  <u>See</u> <u>Dory</u>, 25 F.3d at 83.  In addition, the Second

24

Circuit "has specifically held that a prosecutor is immune from § 1983 liability for withholding exculpatory evidence from a grand jury." Lawlor v. Connelly, 471 F. App'x 64, 65 (2d Cir. 2012); see also Hill, 45 F.3d at 661 (holding prosecutor's alleged act of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" was "clearly protected by the doctrine of absolute immunity."). Accordingly, the failure to present alleged exculpatory evidence, namely an unrelated civil lawsuit filed by Mr. Blitzer against Mr. Ross in which Mr. Jackson is not named as a defendant (Compl., ¶¶ 71, 95), is protected by prosecutorial immunity. Mr. Jackson also claims that the DA defendants failed to properly investigate Mr. and Ms. Blitzer as well as Mr. Stavis before arresting him. (Compl., ¶¶ 93-94). The alleged exculpatory evidence that the DA defendant failed to uncover was related to ill will Mr. Blitzer supposedly harbored towards Mr. Jackson for a transaction that occurred in 2000 about which the DA defendants allegedly knew. (Compl., ¶ 47). This is also a claim about the DA defendants' decision not to present evidence to the grand jury for which the DA defendants are absolutely immune. Since the plaintiff has failed to allege any conduct by the DA defendants for which they are not absolute immune that would form the basis for this cause of action, I recommend dismissing this claim.

c.   Constitutional Malicious Prosecution

For the reasons discussed above, the DA defendants are absolutely immune from any malicious prosecution claim, and this

claim should be dismissed.

      d.   <u>Conspiracy</u>

     To succeed on a conspiracy claim under § 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999); <u>see Ciambriello v. County of Nassau</u>, 292 F.3d 307, 324 (2d Cir. 2002). Since "a 'violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right,'" when "a 'plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights.'" <u>Kogut v. The County of Nassau</u>, No. 06 CV 6695, 2009 WL 2413648, at *12 (E.D.N.Y. Aug. 3, 2009) (quoting <u>Romber v. Morgenthau</u>, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). As discussed in my March 14 Report and Recommendation, the conspiracy alleged in the complaint, even if it met the plausibility standard, would fail to state a cause of action because it is, at best, a conspiracy to entrap Mr. Jackson, which is not a cognizable claim under § 1983. (March 14 R & R at 18-20). Moreover, to the extent that the plaintiff is alleging a conspiracy to present false or misleading evidence to the grand jury, the DA defendants are absolutely immune from liability. <u>See Pinaud</u>, 52 F.3d at 1148 ("[S]ince absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' when the

underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy.'" (alteration in original) (quoting Hill, 45 F.3d at 659 n.2)) (collecting cases).

     To the extent that Mr. Jackson is alleging a conspiracy to falsely arrest him, this claim also fails.  A complaint "must present facts tending to show agreement and concerted action. Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (internal citation and quotation marks omitted).  In other words, a plaintiff must "'provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Allen v. Norman, No. 08 Civ. 6041, 2012 WL 3525584, at *14 (S.D.N.Y. July 23, 2012) (quoting Webb v. Goord, 340 F. 3d 105, 110 (2d Cir. 2003)); see also Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2012) (holding that plaintiff's allegations of conspiracy were "baseless" where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators'"). Mr. Jackson has not set forth any non-conclusory allegations or offered any facts that would suggest an agreement was reached among the defendants to falsely arrest him.  Moreover, all of the alleged acts in furtherance of the conspiracy relate either to a conspiracy to entrap Mr. Jackson or to a conspiracy to present false or misleading evidence to the grand jury; yet as discussed above, in

both instances the predicate acts are not actionable.  Accordingly, the plaintiff's conspiracy claim should be dismissed.

> e.   <u>Failure to Intercede</u>

Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability.  <u>Ricciuti v. New York City Transit Authority</u>, 124 F.3d 123, 129 (2d Cir. 1997); <u>Anderson v. Braden</u>, 17 F.3d 552, 557 (2d Cir. 1994).  The duty to intervene in the false arrest context is described as follows: "'[A]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . . that a citizen has been unjustifiably arrested.'" <u>Wilson v. City of New York</u>, No. 06 CV 229, 2010 WL 3585906, at *8 (E.D.N.Y. Sept. 7, 2010) (alteration in original) (quoting <u>Anderson</u>, 17 F.3d at 557).  For liability to attach there must have been "'a realistic opportunity to intervene to prevent harm from occurring.'" <u>Id.</u> (quoting <u>Anderson</u>, 17 F.3d at 557); <u>Henry-Lee v. City of New York</u>, 746 F. Supp. 2d 546, 565 (S.D.N.Y. 2012).  In addition, "the failure to intercede must be under circumstances making it objectively unreasonable for [an officer] to believe that his fellow officers' conduct did not violate those rights." <u>Gomez v. Village of Sleepy Hollow</u>, No. 07 Civ. 9296, 2011 WL 2652439, at *6 (S.D.N.Y. July 6, 2011) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987)).

The plaintiff makes conclusory allegations that all of the DA defendants and others yet unknown had the opportunity to intercede

to prevent his arrest but failed to do so.  (Compl., ¶ 135).  He has not made any specific allegations that any of the DA defendants, except for the arresting defendants, were present at the time of his arrest, much less had a realistic opportunity to intervene.  See Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (dismissing failure to intercede claim because no evidence defendant was aware of or had opportunity to intercede). Therefore, this claim should be dismissed.  Since I recommend dismissing Mr. Jackson's malicious prosecution and due process claims, the claims for failure to intercede to prevent those acts should also be dismissed.  See Henry-Lee, 746 F. Supp. 2d at 566 ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

f.   Malicious Abuse of Process

A claim for malicious abuse process lies when a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001).

"[T]he gist of abuse of process is the improper use of process after it is regularly issued." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (internal quotation marks omitted); see also Gillman v. Marsh and McLennan Companies, Inc., 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012) (under New York law, "the pursuit of a collateral

objective must occur <u>after</u> the process is issued; the mere act of issuing process does not give rise to a claim." (internal quotation marks omitted)).   In addition, the plaintiff must allege an improper purpose or objective beyond or in addition to his criminal prosecution; an improper motive is insufficient. <u>Savino</u>, 331 F.3d at 77; <u>Hoffman v. Town of Southampton</u>, __ F. Supp. 2d __, __, 2012 WL 4465779, at *9 (E.D.N.Y. 2012) ("[T]he Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard."). "Personal animosity is a collateral motive, not a collateral purpose." <u>Newton v. City of New York</u>, 566 F. Supp. 2d 256, 280 (S.D.N.Y. 2008).

The plaintiff contends that the DA defendants issued legal process to place Mr. Jackson under arrest to prevent Mr. Ross from asserting an advice of counsel defense and to appease the private citizen defendants. (Compl., ¶ 142).   As discussed in my March 14 Report and Recommendation, Mr. Jackson's arrest was within the intended scope of the process, and the alleged improper objectives were attendant to the arrest, not collateral to it. (March 14 R & R at 42); <u>see Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) ("If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." (alteration in original) (internal quotation marks omitted)).   Moreover, to the extent that Mr. Jackson seeks to hold the DA defendants liable for initiating prosecution against

30

him, the DA defendants are entitled to absolute immunity. <u>Moye</u>, 2012 WL 2569085, at *7. Absolute immunity applies regardless of any allegation that the prosecutor's actions were undertaken with an improper state of mind or improper motive. <u>Shmueli v. City of New York</u>, 424 F.3d 231, 237 (2d Cir. 2005). Accordingly, I recommend dismissing this claim.

### g.   State Law Malicious Prosecution Claim

As discussed above, since absolute immunity is a defense not only to § 1983 claims but to related state law claims, I recommend dismissing the state law malicious prosecution claim. <u>See</u> <u>Moye</u>, 2012 WL 2569085, at *7 & n.5.

### 3.   Personal Involvement

The DA defendants argue that the complaint does not allege any personal involvement of defendants Kitsis, Pennisi, Wigdor, or Alexander. (Def. Memo. at 7). Personal involvement by the defendant in any alleged constitutional violation is a prerequisite to an award of damages under Section 1983. <u>Hernandez v. Keane</u>, 341 F.3d 137, 144-45 (2d Cir. 2003); <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999). Therefore, "to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" <u>Harris v. Westchester County Department of Corrections</u>, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008)

(alteration in original) (quoting <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 155 (2d Cir. 2001)).

Since the only claim that I do not recommend dismissing is the false arrest claim, I will only address personal involvement of the DA defendants relative to that claim.  Only defendants Seewald and Wigdor are alleged to have been personally involved in the plaintiff's arrest.  (Compl., ¶ 56).  The complaint contains only conclusory and unsupported allegations of the other DA defendants' involvement.  Accordingly, I recommend dismissing all of the DA defendants from this action except for defendants Seewald and Wigdor.

<u>Conclusion</u>

For the reasons above, I recommend that the DA defendants' motion (Docket no. 42) be denied with respect to the false arrest claims asserted against defendants Seewald and Wigdor and granted in all other respects.  Pursuant to 28 U.S.C. § 636 (b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2440, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE.

Dated: New York, New York
       January 14, 2013

Copies mailed this date to:
Amy B. Marion, Esq.
Bruce Barket, Esq.
Quadrino & Schwartz, PC
666 Old Country Road, 9th Floor
Garden City, New York 11530

Cynthia M. Sittnick, Esq.
Assistant District Attorney
One Hogan Place
New York, New York 10013

Kevin Schlosser, Esq.
Meyer, Suozzi, English & Klein, PC
990 Stewart Avenue
P.O. Box 9194
Garden City, New York 11530

Adam Michael Felsenstein, Esq.
Martin Clearwater & Bell LLP
220 East 42nd Street 13th Floor
New York, NY 10017

David S. Douglas, Esq.
Gallet Dreyer & Berkey, LLP
845 Third Avenue
New York, New York 10022

33